REF: WOM201406
LAW OFFICE OF TINA NIELSEN AMODEO, L.L.C.
1170 Delsea Dr., Ste. SF-5
Westville NJ 08093
Phone 609-617-5584
Tina Nielsen Amodeo, Esq.
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CECILIA J. FOGARTY | Hon. Judge Robert B. Kugler |
| | No. 1:14-cv-04525-RBK-JS |
| Plaintiff | Filed Electronically |
| | **AMENDED COMPLAINT** |
| VS. | |
| HOUSEHOLD FINANCE CORPORATION III A/K/A HOUSEHOLD FINANCE CORP. III; JOHN P. FOGARTY A/K/A JOHN P. FOGARTY, JR.; DORA J. CULLEN; LSF8 MASTER PARTICIPATION TRUST; CALIBER HOME LOANS, INC. | |
| Defendants | |

1

The Plaintiff, CECILIA J. FOGARTY, a New Jersey resident, ("FOGARTY"), by and through her counsel, complains as follows:

**JURISDICTION AND VENUE**

1.      This case, initiated by FOGARTY by the filing of a complaint in the New Jersey Superior Court, Burlington County on 05/30/2014 ("STATE COURT ACTION"), was removed from the Superior Court of New Jersey, Burlington County, by virtue of Notice of Filing of Notice of Removal filed under Docket No. BUR-C-051-14 and Notice of Removal electronically filed with the United States District Court for the District of New Jersey on 07/17/2014 by Defendant Household Finance Corporation II a/k/a Household Finance Corp. III ("HFC").

2.      The Court has subject matter jurisdiction over this action pursuant to federal question under 28 U.S.C. § 1331, 15 U.S.C. § 1681, et seq. ('FCRA"), 12 U.S.C. § 2601, et seq. ('RESPA"), 12 U.S.C.§ 2605; 28 U.S.C. §1446, 15 U.S.C. § 1601 ("TILA"), 15 USC § 1692a ('FDCPA") and supplemental jurisdiction under 28 U.S.C. § 1367 over FOGARTY'S remaining state law claims because they are so related to the federal claims within that federal subject matter jurisdiction that they form part of the same case or controversy is proper over the entire case under Article III of the U.S. Constitution.

3.      Jurisdiction of this court for the pendent claims is authorized by Fed.R.Civ.P.18 (a).

4.      Amendment of the complaint filed in the STATE COURT ACTION and removed to this Court is permitted as a matter of course without the consent of any Defendant named herein pursuant to Fed.R.Civ. P. 15(a)(1)(B), this pleading is one to which a responsive pleading is required (as to all Defendants) and no responsive pleading has been filed.

5.      Defendant, HFC, was served with the complaint in the STATE COURT ACTION on June 20, 2014 by Certified Mail, Return Receipt Requested and Regular U.S. Mail, the Certified Mail Return Receipt having been signed for by HFC on June 20, 2014.

6.      Defendants, JOHN P. FOGARTY A/K/A JOHN P. FOGARTY, JR. ("JPF") AND DORA J. CULLEN ("CULLEN") were served by mailing a summons and certified true copy of the complaint filed

in the STATE COURT ACTION, in separate envelopes, by Certified Mail, Return Receipt Requested and Regular U.S. Mail to their last known addresses on July 3, 2014.  The Certified Mail Return Receipts envelopes have been returned as "Unclaimed"; however, the Regular U.S. Mail mailings have not been returned and are presumed received.

7.       Defendants, LSF8 MASTER PARTICIPATION TRUST ('LSF8") and CALIBER HOME LOANS, INC. ("CALIBER") are being added to this action by virtue of this Amendment, which shall be duly served upon them in according with the Federal Rules of Civil Procedure.

8.       No responsive pleading has been served by Defendants as of the date of this Amended Complaint.

9.       Pursuant to Fed. R. Civ. Pro. 15(c)(B), this amendment relates back to the date of the filing of the original STATE COURT ACTION complaint insofar as the claims asserted in this Amended Complaint arose out of the conduct, transaction or occurrence set out in the original STATE COURT ACTION;

10.      This amendment relates back to the date of the filing of the original STATE COURT ACTION insofar as this amendment changes the naming of a party, namely CALIBER and LSF8, against whom a claim is asserted under Fed. R. Civ. Pro. 15(c)(1)(C), the pleading is one which may be amended as a matter of course pursuant to Rule 15(a)(1)(B) and service shall be made on these named parties within the period provided by Fed. R. Civ. Pro. 4(m) such that they will not be prejudiced in defending on the merits and knew or should have known that the action would have been brought against them.

## PARTIES

11.      FOGARTY is the owner of property located at 12 Lancaster Court, Westampton, New Jersey,

12.      HFC is a foreign for-profit corporation registered to do business in the State of New Jersey in the business of making, holding and servicing residential mortgage loans.

13.       JOHN P. FOGARTY A/K/A JOHN P. FOGARTY, JR., ("JPF") is the husband of Plaintiff FOGARTY residing at XXXXXXXXXXXXXXXXXXXXXX, Sarasota, Florida 34232-2010.

14.      DORA J. CULLEN ("CULLEN") is an adult residing at XXXXXXXXXXXXXXXXXXXXXX, Levittown PA 19056-2518.

3

15.     LSF8 is an investor in home mortgages with an address of c/o Caliber Home Loans, Inc., as Servicers, 13801 Wireless Way, Oklahoma City, Oklahoma 73134.

16.     CALIBER is a corporation in the business of servicing residential mortgage loans with an address of 13801 Wireless Way, Oklahoma City, Oklahoma 73134.

### FACTS COMMON TO ALL CAUSES OF ACTION

17.      FOGARTY is the record owner of the property located at 12 Lancaster Court, Westampton, New Jersey, (the "Property") by virtue of Quitclaim Deed from JPF dated May 27, 2011, and recorded June 1, 2011, in the Burlington County Clerk's Office under document Number 4815165.  See **EXHIBIT A** attached hereto and incorporated herein by reference.

18.     FOGARTY is in peaceable possession of the land and no action is pending to enforce any claim to or against the Property.

19.     The Property is further identified as Lot 62 in Block 1502 f/k/a Lot Q.18 in Block 10, on the Tax Map of the Township of Westampton, County of Burlington, State of New Jersey.  This action involves and relates to the Property, more particularly described as follows:

> The parcel of land, and improvements and appurtenances thereto in the County of Burlington, State of NJ to wit:
>
> BEGINNING at a point 50 feet wide distant 343.74 in the curved Southeasterly line of Lancaster Court from a Southeasterly end of a curve with a radius of 20 feet connecting the Southerly line of Lancaster Court with the Southeasterly line of Lancaster drive 60 feet wide said point also being in the division line between lots 18 & 19, Block Q as shown on plan hereinafter mentioned; thence,
>
> (1)  Northeasterly along the curved Southeasterly line of Lancaster Court curving to the left with a radius of 160 feet the arc distance of 64.87 feet to a point in the division line between Lots 17 & 18 said block and plan; thence

4

(2)  South 69 degrees 53 minutes 04 seconds East along last mentioned division line 135.65 feet to a point in line of Holly hills, section 3; thence

(3)  South 13 degrees 11 minutes 45 seconds West along lands last mentioned 30.72 feet to a point corner to same; thence

(4)  South 29 degrees 44 minutes 44 seconds West still along lands last mentioned 92.64 feet to a point in the division line first mentioned; thence

(5)  North 46 degree 39 minutes 23 seconds West along first mentioned division line 148.90 feet to the point and place of BEGINNING.

20.    FOGARTY and JPF originally took title to the Property in 1979 by Deed from Bob Scarborough, Inc. which Deed was recorded February 26, 1979 in the Burlington County Clerk's Office in Deed Book 2181 at Page 79.

21.    FOGARTY and JPF purchased the Property using the proceeds of a First Purchase Money Mortgage ("FPMM") with New Jersey National Bank which was recorded February 26, 1979 in mortgage Book 1448 at Page 31.

22.    Both FOGARTY and JPF were parties to the FPMM mortgage transaction with New Jersey National Bank.

23.    FOGARTY did not participate in any mortgage loan transactions with Defendant HFC.

24.    The FPMM was paid in full and cancelled of record by Cancellation of Mortgage recorded 10/15/2001 in the Burlington County Clerks" Office under Instrument Number 3569101.

25.    A search of the Burlington County Clerk's records on the Property indicate the following Mortgages, Assignments, Discharge of Mortgages and Lis Pendens filed against the Property that post-date the FPMM:

A. Mortgage dated August 27, 2001 to MBNA AMERICA (DELAWARE), N.A. in the original principal amount of $91,806.87 recorded September 5, 2001 in Mortgage Book 8114 at Page 248 under Document Number 306577 ("2001 MORTGAGE").

B.  Assignment of Mortgage dated May 5, 2002 from MBNA Consumer Services, Inc. a.k.a. MBNA AMERICA (DELAWARE), N.A. to HFC recorded June 10, 2002 in Assignment Book 1632 at Page 325 under Document Number 3663545.

C.  Assignment of Mortgage dated July 15, 2002 from MBNA Consumer Services, Inc. a.k.a. MBNA AMERICA (DELAWARE), N.A. to HFC and recorded August 23, 2002 in Assignment Book 1644 at Page 224 under Document Number 3691703.  (This assignment appears to assign the FIRST MORTGAGE although it was already assigned as stated in Paragraph 25B, hereinabove.)

D.  Discharge of Mortgage dated January 14, 2003 recorded March 18, 2003 in Discharge of Mortgage Book 597 at Page 304 under Document Number 3786798.   (This document discharged the 2001 MORTGAGE).

E.  Mortgage dated June 13, 2002 to HFC in the original principal amount of $179,994.71 recorded June 17, 2002 in Mortgage Book 8479 at Page 513 ("2002 MORTGAGE").

F.  Discharge of Mortgage recorded October 23, 2002 in Discharge Book 534 at Page 61 under Document Number 3717775.   (It is unknown at the time of filing this Complaint what Mortgage this document discharged.)

G.   Mortgage dated September 22, 2003 in the original principal amount of $233,093.51 recorded October 15, 2003 in Mortgage Book 9424 at Page 784 under Document Number 3909319 ("2003 MORTGAGE").

H.  Discharge of Mortgage recorded October 28, 2003 in Discharge of Mortgage Book 735 at Page 193.  (This document discharged the 2002 MORTGAGE.)

I.   Lis Pendens filed by HFC and recorded February 21, 2007 in Miscellaneous Book 334 at Page 249 related to Foreclosure Action commenced by HFC against JPF and FOGARTY on February 8, 2008 under Docket Number F-2991-07 and relating to the 2003 MORTGAGE.  (Although the Foreclosure Action was dismissed on March 2, 2007, the Lis Pendens was never cancelled of record).

J.  Lis Pendens filed by HFC and recorded September 18, 2008 in Miscellaneous Book 377 at Page 16 under Document number 4585230 related to Foreclosure Action commenced by HFC against FPF and FOGARY on July 10, 2008 under Docket Number F-26359-08 and relating to the 2003 MORTGAGE.  Said Lis Pendens was cancelled and discharged of record by virtue of Discharge of Lis Pendens recorded January 8, 2009 in Miscellaneous Book 386 at Page 245 under Document Number 4608579.

26.     From May 5,, 2002 (the date of the assignment of the 2001 MORTGAGE to HFC) and through the date of the filing of the STATE COURT ACTION on 05/30/2014, HFC was the holder and the servicer of the 2001 MORTGAGE, the 2002 MORTGAGE and the 2003 MORTGAGE.

**THE ALLEGED SALE OF THE 2003 MORTGAGE FROM HFC TO LSF8**

27.     According to a letter from CALIBER dated June 6, 2014 entitled, "NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN", ("NOTICE OF SALE") and received by Plaintiff thereafter, HFC sold the 2003 MORTGAGE to LSF8 on May 3, 2014.  See NOTICE OF SALE attached hereto as **<u>EXHIBIT B</u>** and incorporated herein by reference.

28.     As of August 6, 2014, the land records in the Burlington County Clerk's Office do not show any record of an Assignment of Mortgage of the 2003 MORTGAGE between HFC and LSF8.

29.     The NOTICE OF SALE, which was generated by CALIBER indicates that CALIBER is the new servicer of the 2003 MORTGAGE.

30.     The NOTICE OF SALE states that the mailing address of LSF8 is c/o Caliber Home Loans, Inc., as Servicers, 13801 Wireless Way, Oklahoma City, Oklahoma 73134.

**FACTUAL BACKGROUND RELATED TO JPF**

31.     Beginning in or about 1996 or 1997, JPF began gambling on the internet and in offshore sports gambling and, in local transactions, he employed the services of area bookies for gambling purposes.

32.     In 2007, FJP was charged with Theft and Forgery and placed in a Pre-Trial Intervention Program which he completed in June of 2009 for theft from a bank account that was not his.

33.     On or about March 9, 2010, JPF was arrested and charged with theft by deception under N.J.S.A. 2C:20-4A, 2C:20-4B, 2C:20-4C, 2nd degree, and elements of Computer Theft N.J.S.A. 2C:20-25C, 2nd degree.

34.     On April 4, 2011 JPF pled guilty to all charges, the Elements of Computer Theft charge was dismissed.

35.     On May 27, 2011, JPF was sentenced to five years in New Jersey State Prison and ordered to pay the 80-year old victim of his crimes back $81,000.00 he had taken from her under false pretenses that he was investing it for her but instead gambled it away.

36.     Attached hereto and incorporated herein by reference as **EXHIBIT C** and **EXHIBIT D**, respectively, are copies of Criminal Judgment recorded June 9, 2011 in the Burlington County Clerk's Office in Criminal Book 115 at Page 23 under Document Number 4817001 and also recorded in Criminal Book 115 at Page 67 under Document Number 4818995.

## FOGARTY'S DISCOVERY OF JPF'S THIEVERY

37.     It was not until JPF's March 2010 arrest that FOGARTY incrementally began to truly discover the depth her husband, JPF's, hidden gambling addiction which came to the surface as a result of the crimes with which he was charged.

38.     Prior to that, beginning in the summer of 2008, FOGARTY learned that JPF stole money from FOGARTY'S sister, JPF's Aunt and JPF's parents and was alerted by JPF's parents that JPF may have stolen from FOGARTY as well.

39.     In June, 2008, FOGARTY first discovered and addressed JPF's illegal access to her IRA account which JPF's mother had brought to her attention.

40.     JPF drained all funds from FOGARTY'S IRA that she had built up during her entire career. The total loss on FOGARTY'S IRA due to JPF'S actions was $166,000.00.  Through investigation

by the Securities and Exchange Commission, the Financial Industry Regulatory Authority, FOGARTY's attorney at the time and JPF, that issue was resolved in June, 2012, with FOGARTY receiving partial reimbursement of her IRA and JPF's agreement to make monthly payments to FOGARTY.

41. In or about July, 2008, FOGARTY discovered JPF stole approximately $140,000.00 from FOGARTY'S small business account without FOGARTY'S consent.

42. In or about August, 2008, FOGARTY discovered that JPF stole the funds in JPF and FOGARTY'S other investment accounts in the approximate amount of $250,000.00 without FOGARTY'S consent.

43. In or around August, 2008, FOGARTY began to receive information from JPF's parents that JPF may have mortgaged the Property without her knowledge.

44. On or about August 28, 2008, FOGARTY spoke with HFC's William Powell at phone number 732-920-5700 to inform him about a possible fraudulent mortgage. William Powell referred FOGARTY to HFC's Steve Metz a/k/a Mertz at phone number 800-333-5448 whom FOGARTY informed about the possible fraudulent mortgage.

45. On or about August 29, 2008, FOGARTY spoke with a representative of HFC's fraud department at phone number 888-245-9366 to alert them of the potential fraud. During that conversation HFC advised FOGARTY that there is a mortgage on the Property for which no payments had been made for over a year. HFC referred FOGARTY to the HFC's Foreclosure Department and advised her that the mortgage paperwork could be obtained at HFC's Lakewood, New Jersey office.

46. On September 2, 2008, FOGARTY visited the branch office of HFC located on Route 70 – 1900, Shorrock St., Town & Country Shopping Center, Suite 211, Lakewood NJ 08701 and spoke with HFC employee, Jennifer Kerrick, to inform HFC about the fraud and request a copy of the 2003 MORTGAGE. Upon explaining the fraudulent mortgage and requesting a copy of the mortgage and all the paperwork related to it, Jennifer Kerrick placed a call to Steve Metz a/k/a Mertz, whereupon Jennifer Kerrick advised

9

FOGARTY that HFC just moved its Mt. Laurel office paperwork to Lakewood, NJ, that she will have to locate the paper work and forward it to FOGARTY in a few days.

47.     During this visit to HFC's Lakewood office, Jennifer Kerrick requested that FOGARTY produce her driver's license, which Jennifer Kerrick photocopied.  This was a New Jersey issued photo Driver's License.

48.     Within a few days of September 2, 2008, FOGARTY received one page of a document, the face page of the 2003 MORTGAGE, from HFC without any other paperwork.

49.     In or around September, 2008, fearful that she would lose her home, FOGARTY again spoke with HFC's Steven Metz a/k/a Mertz and William Powell.

50.     At that time, Steven Metz a/k/a Mertz and William Powell advised her to contact HFC's Hardship Department.

51.     At that time, FOGARTY did contact the Hardship Department and believed HFC would continue an investigation of the fraud she had advised HFC had taken place.

52.     Also, unbeknownst to FOGARTY, JPF had been attempting to negotiate payment deferrals on the 2003 MORTGAGE on his own without FOGARTY's knowledge, input or participation, in order to deal with payments that were past due on the mortgages.

53.     Per HFC records, JPF, through communication on his own with HFC, requested and obtained payment deferrals on the 2003 MORTGAGE no less than six times between 2005 and 2012, resulting in forty-five payments being put on the back end of the 2003 MORTGAGE.

54.     From 2001 through 2012, HFC and JPF participated in a continuing course of conduct that permitted them to conceal the existence of the mortgages from FOGARTY.

55.     Per HFC, on February 6, 2007, HFC did advance $10,082.90 to Westampton Township for delinquent 2005 and 2006 Property taxes.

56.     On May 13, 2008, April 28, 2009 and March 16, 2010, HFC issued letters addressed to JPF and FOGARTY stating that HFC increased the payment amount on the MORTGAGE as a result

of HFC having to acquire and pay for Hazard Insurance on the Property.  FOGARTY never personally received these letters.

57.     FOGARTY had no knowledge of the any of tax payments or homeowner's insurance payments or mortgages including the 2003 MORTGAGE, and the deferrals or payment increases on the 2003 MORTGAGE.

58.      HFC and JPF never disclosed these transactions to FOGARTY.

59.     HFC did not gain FOGARTY's consent to these deferrals or payments.

60.     Soon after her discovery, FOGARTY confronted JPF with her knowledge of the 2003 MORTGAGE about which she had received the one page from HFC.

61.     At that time, JPF disclosed to FOGARTY that CULLEN was his accomplice and that CULLEN signed FOGARTY's name to the mortgage documents.

62.     From June, 2011 through June, 2012, JPF was imprisoned for the theft of funds from the elderly victim as explained more in detail hereinafter.

63.     During that time period, the 2003 MORTGAGE was paid via auto draft of JPF's account that was funded by his Social Security and pension income.

### THE 2001 MORTGAGE

64.     The Truth-in-Lending Disclosure Statement from the 2001 MORTGAGE shows that various creditors of JPF were paid off from the proceeds for a total amount of $55,651.00.

65.     The Truth-in-Lending Disclosure Statement from the 2001 MORTGAGE transaction shows that proceeds of $23,405.83 were disbursed to JPF.

66.     The Truth-in-Lending Disclosure Statement from the 2001 MORTGAGE transaction shows that the entire amount financed, excluding a prepaid finance charge of $6,398.94, was $85,407.93.

67.     On August 28, 2001, the date of the 2001 MORTGAGE closing, FOGARTY was attending meetings at the College of New Jersey as part of the hiring process of FOGARTY as an adjunct professor for the college.

68.     FOGARTY did not participate in the 2001 MORTGAGE transaction or have any knowledge of it.

## THE 2002 MORTGAGE

69.     The Settlement Statement from the 2002 MORTGAGE transaction shows that the 2001 MORTGAGE was paid off in the amount of $79,509.96.

70.     The Settlement Statement from the 2002 MORTGAGE transaction shows that various creditors of JPF were paid off from the proceeds for a total amount of $37,170.03.

71.     The Settlement Statement from the 2002 MORTGAGE transaction shows that proceeds paid to JPF were $49,804.09.

72.     The Settlement Statement from the 2002 MORTGAGE shows that the entire amount financed was $179,994.71, excluding settlement charges of $13,510.63.

73.     On the entire day of June 13, 2002, the date of the 2002 MORTGAGE transaction, FOGARTY was out of state in Pennsylvania helping to take care of her 80-year old mother who was hospitalized.

74.     FOGARTY did not participate in the 2002 MORTGAGE transaction or have any knowledge of it.

## THE 2003 MORTGAGE

75.     The Settlement Statement from the 2003 MORTGAGE transaction shows that the 2002 MORTGAGE was paid off in the amount of $181,991.89.

76.     The Settlement Statement from the 2003 MORTGAGE transaction shows that various creditors of JPF were paid off from the proceeds for a total amount of $31,743.00.

77.     The Settlement Statement from the 2003 MORTGAGE transaction shows that proceeds paid to JPF were $6,906.37.

78.     The Settlement Statement from the 2003 MORTGAGE transaction shows that the total amount financed was $233,093.51, excluding settlement charges of $12,452.25.

79.     On September 22, 2003, the date of the 2003 MORTGAGE transaction, FOGARTY was teaching as an adjunct professor at the College of New Jersey.

80.     FOGARTY did not participate in the 2003 MORTGAGE transaction or have any knowledge of it.

### FACTS RELATED TO ALL MORTGAGE TRANSACTIONS

81.     HFC is a loan originator.

82.     CALIBER is a debt collector as the term debt collector is defined in the New Jersey Consumer Fraud Act ("NJFCA"), N.J.S.A. 56:8-1, et seq., and the FDCPA 15 U.S.C. § 1601 at 15 U.S.C. §1692(a)(6).

83.     Any violations of the FDCPA also constitute a violation of the NJFCA.

84.     HFC was the servicer of the 2001 MORTGAGE, the 2002 MORTGAGE and the 2003 MORTGAGE as defined under and for purposes of RESPA from the date of the 2003 MORTGAGE through the date it allegedly transferred the 2003 MORTGAGE to LSF8.

85.     CALIBER is, per the Notice of Transfer referred to herein, the current servicer of the 2003 MORTGAGE as defined under and for the purposes of RESPA.

86.     FOGARTY, although not liable to HFC, CALIBER or LSF8, is a "consumer" as defined in FDCPA 15 U.S.C. § 1692(a)(3) and the NJFCA.

87.     FOGARTY did not receive any of the proceeds of the mortgage transactions.

88.     FOGARTY did not benefit from the mortgage transactions.

89.     None of the creditors paid off by virtue of these transactions were FOGARTY's creditors.

90.     FOGARTY never requested, applied for, signed any documents in any form or fashion for the provision of the aforementioned mortgages on the Property.

91.     FOGARTY had no part in creating, applying for or utilizing the process of the mortgage loans and had no knowledge of their existence during all relevant times.

92.     FOGARTY never received any documents as part and parcel of the mortgage transactions including but not limited to, any Truth in Lending Statement or any Notice of Right to Cancel.

93.     The mortgage loans were created by way of theft of her identity by CULLEN and JPF.

94.     HFC knew or should have known that JPF and CULLEN were committing fraud and identity theft and acted with reckless disregard in aiding and abetting JPF and CULLEN's actions.

95.     HFC failed to take reasonable and proper precautions at the mortgage closings to ensure that the identity of the person purporting to be FOGARTY was in fact FOGARTY.

96.     HFC knowingly and substantially aided in JPF and CULLEN's wrongdoing by failing to take proper precautions to verify the identity of CULLEN when she purported to be FOGARTY and by continuing to ignore or do anything about the facts provided by FOGARTY related to the identity theft and fraud.

97.     HFC lent money to JFP under the mistake that it believed they obtained the consent of FOGARTY and its mistake that FOGARTY joined in the mortgage transactions.

98.     HFC made the mistake of not ensuring that the person who was purporting to be FOGARTY and signing the mortgage documents was in fact FOGARTY rather than CULLEN.

99.     HFC failed to take reasonable steps to investigate or report the fraud and identity theft that FOGARTY brought to its attention.

100.    HFC, CULLEN and JFP fraudulently concealed the mortgages from FOGARTY and continued to do so on a consistent basis in order that they may profit from the transactions.

## FOGARTY'S ATTEMPTS TO GET HFC TO REMOVE FOGARTY FROM THE MORTGAGE BASED UPON THE FRAUD AND IDENTIFY THEFT

101.    Throughout 2011 through 2014, FOGARTY made attempts through the New Jersey Department of Banking and Insurance, the Consumer Financial Protection Bureau, the Westampton Police Department and HFC to have the 2003 MORTGAGE removed as a lien on her Property due to the theft of her identity and the fraud perpetrated upon her.

102.    A letter dated October 10, 2011 from K. McPherson of HFC's Customer Resolution Department in response to FOGARTY's written request to HFC to investigate the fraud, states that HFC's "branches are closed and we are unable to investigate any conversations that may have transpired.  Our records do not reflect that a fraud claim was submitted".  It also gave instructions to FOGARTY to complete a fraud claim

14

and gave a bogus number for her to reach out to HFC's Fraud and Investigations Department. (That letter is attached hereto as **EXHIBIT E** and incorporated herein by reference.)

103.     That letter stated the terms of the 2003 MORTGAGE and the history of forced-placed insurance placed on the account by HFC.

104.     That letter states the past due amount of $23,286.02 on the 2003 MORTGAGE for the September 26, 2010 payment and subsequent payments, that the account was placed with HFC's Loss Mitigation Department but that a foreclosure sale had not yet been scheduled and directs FOGARTY to contact HFC's Loss Mitigation Department to discuss payment options.

105.     That letter did not include language that HFC was a debt collector and that information obtained would be used for debtor collection purposes as required by FDCPA (15 U.S.C. § 1692e(11)).

106.     The letter, dated October 10, 2011 was made in response to correspondence HFC received from FOGARTY that very same day.

107.     Any reasonably diligent investigation into the facts presented to HFC from FOGARTY would necessarily take more than one day to complete.

108.     On October 21, 2011, having received the letter from HFC, FOGARTY called and spoke with HFC's K. McPherson at phone number 866-518-9419, extension 4678, to explain the fraudulent nature of the mortgage again. On that date, FOGARTY also spoke with an HFC representative named Garo who advised FOGARTY to resolve the issue without an attorney and directed FOGARTY to the Customer Resolution Department.

109.     On that date, FOGARTY spoke to an HFC representative named Johna Thomas at HFC's Customer Resolution Department instructed FOGARTY to complete a claim form that she will receive in one or two weeks.

110.     On November 9, 2011, FOGARTY completed and submitted to HFC's Johna Thomas of the Fraud Claims & Resolutions Department a "Beneficial Claim Form" and "Affidavit of Forgery" explaining the

fraud and supplying signature samples and her photo identification.  See Claim Form and Affidavit of Forgery attached hereto as **EXHIBIT F** and incorporated herein by reference.

111.    In early November, 2011, FOGARTY was diagnosed with cancer, underwent a lumpectomy on November 16, 2011 and had extensive radiation treatment from January 2012 through March, 2012 which she was dealing with along with working on the resolution of JPF's theft of her IRA.

112.    A letter dated November 11, 2011 from T. Kalina at HFC's Customer Resolution Department states, "Due to the closure of all HFC and Beneficial branches in 2009, we are unable to investigate any conversations that may have taken place in 2008 regarding a claim of a fraudulent loan".

113.    On November 30, 2011, HFC sent a letter to Joseph Mellito, Investigator I at the New Jersey Department of Banking and Insurance enclosing thirteen documents from the 2003 MORTGAGE transaction.  None of those documents including photo identification of FOGARTY.

114.    On or about December 2, 2011, one document FOGARTY discovered at the Property while flipping beds to clean them, was a letter that was hidden under the mattress dated June 13, 2002 signed by a "John" stating:

> "Dear Jack:  Enclosed are corrected copies of the mortgage you signed today.  The copies you have in your paperwork have an incorrect date in the legal description of the property.  Please discard the original copies you received and retain these for your file.  Thanks, John P.S. I hope Cecilia's finger is okay".

Attached hereto is **EXHIBIT G** is a copy of that letter which is incorporated herein by reference.

115.    Upon information and belief, CULLEN suffers from Reflex Sympathetic Dystrophy Syndrome which causes extreme pain and tremors in the hand and the fingers.  Upon information and belief, the aforementioned note referred not to FOGARTY's finger but to CULLEN's finger since CULLEN was the person who signed the documents.

116.    FOGARTY never suffered from any finger injury or pain or difficulties that would cause someone to state in a letter, "I hope Cecelia's finger is okay."

117.    On December 12, 2011, FOGARTY called Johna at HFC and left a message requesting to know how long the investigation will take.

118.    In December 2011, HFC's Fraud Department reviewed the 2003 MORTGAGE account and FOGARTY's fraud allegations, denied FOGARTY's claim and determined that FOGARTY is liable for the debt without further explanation.

119.    In January 2012, having had no success in obtaining any relief from HFC about her request to remove her name from the mortgage, FOGARTY wrote to the New Jersey Department of Banking and Insurance.

120.    In February 2012, FOGARTY receives further communication from HFC that her fraud claim was denied without further explanation.

121.    In March 2012, upon recommendation of FOGARTY's securities attorney, Carmine Caruso, Esq., a handwriting analysis is ordered to determine that withdrawals from her IRA were not made by her.

122.    Two handwriting analyses completed by Mr. William Ries of Forensic Consultants, in March 2012 and May 2012, respectively, for purposes of determining that withdrawal requests from FOGARTY's IRA and several loan documents related to the HFC mortgages were not signed by FOGARTY. The analyses were performed on known signatures of FOGARTY, JPF and CULLEN and compared them to withdrawal requests for the IRA matter and loan documents all identified as the "questioned documents".

123.    Mr. Ries' analysis stated that it is his opinion within a reasonable degree of scientific certainty that all the standard signatures of FOGARTY were written by the same person.

124.    Mr. Ries' analysis also stated his opinion that within a reasonable degree of scientific certainty that the questioned signatures were not written by the same person who wrote the standard signatures of FOGARTY.

125.    The IRA issue was resolved in June 2012, through FOGARTY's actions through the Securities and Exchange Commission, the Financial Industry Regulatory Authority and her securities attorney such that her IRA was reinstated and she received partial reimbursement of the funds JPF had stolen from the IRA.

126.    Thereafter, FOGARTY sent the handwriting analyses to HFC along with the explanation of the fraud and again requested that she be removed from the 2003 MORTGAGE.

127.    In summer 2013, HFC sent FOGARTY a notice of default regarding the 2003 MORTGAGE.

128.    In Fall 2013, the New Jersey Department of Banking and Insurance responded to FOGARTY's request for an investigation stating that HFC did not fall under its jurisdiction (because HFC is not licensed under that entity) and referring her to the Consumer Financial Protection Bureau.

129.    Just after writing to the Consumer Financial Protection Bureau, FOGARTY receives a copy of documents sent by HFS to the Consumer Financial Protection Bureau dated October 28, 2013 which fully revealed to FOGARTY the existence of the prior mortgages and the 2003 MORTGAGE.

130.    The October 28, 2013 letter from HFC to the Consumer Financial Protection Bureau in response to the Consumer Financial Protection Bureau's inquiries to HFC, simply reiterates that HFC's Fraud Department reviewed FOGARTY's account on two separate occasions and determined that she is liable for the debt.

131.    Other than stating that HFC believed the signature on the fraud claim form FOGARTY submitted was consistent with the signatures on the loan documents and that the 2003 MORTGAGE paid off the previous mortgages, HFC continuously failed to respond in good faith to the substance of FOGARTY's express complaints that the 2003 MORTGAGE was the result of identity theft and fraud.

132.     On November 2, 2013 FOGARTY wrote a second letter to the Consumer Financial Protection Bureau again asserting that she did not take part in the mortgage transactions that she has just learned about fully from documents HFC sent to the Consumer Financial Protection Bureau.

133.    In or around late November, 2013, FOGARTY completed a Probable Cause Statement and delivered it to the Westampton Township Municipal court for filing of a complaint against JPF for the mortgage fraud and identity theft.  A copy of the Probable Cause Statement is attached hereto as **EXHIBIT H** and incorporated herein by reference.

134.    On February 7, 2014, HFC received a Qualified Written Request (QWR) as defined in RESPA from FOGARTY's counsel which HFC did fail to respond to in content or timeliness in accordance with RESPA as is more fully described hereinafter.

135.    HFC failed to respond to FOGARTY's counsel's request to HFC for a complete explanation of and the documents that formed he bases for its' unilateral decision that FOGARTY is still liable for payment of the 2003 MORTGAGE.

136.    Documents HFC sent FOGARTY related to the 2003 MORTGAGE did not include any documents related to verification of the identity of the person who purported to sign the documents, despite FOGARTY's counsel's specific request for copies of photo identification or other identification collected at the closings for the all the mortgages.

142.    HFC failed to respond to FOGARTY's counsel's request to HFC for a copy of the Promissory Notes that the mortgages secured and affidavits that the original Notes are in HFC's possession.

143.    HFC has failed to provide FOGARTY with the copies of front and back of all cleared checks disbursed at the funding of the mortgage transactions, despite her request.

144.    HFC has failed to provide FOGARTY with a copy of the 1003 documents (loan applications) for the mortgage transactions, despite her request.

145.    HFC has failed to provide FOGARTY with account information for each creditor paid off as part of the mortgage transactions including copies of the credit reports run as part of the mortgage application, the name and address on the credit card account, despite her request.

146.    HFC has failed to provide FOGARTY with all the information she has requested in order to properly investigate and determine the extent of the fraud perpetrated, despite her requests.

147.    Upon inquiry to HFC regarding where HFC was mailing any statements or correspondence related to the mortgage transactions, HFC stated it was mailing all correspondence about the 2003 MORTGAGE to JPF and FOGARTY at a P .O. Box 50382, Sarasota, Florida 34232.

148.    In response to FOGARTY's counsel's inquiry as to why all correspondence from HFC was

being mailed to the Florida address and to request that it be mailed to FOGARTY at the Property address, HFC stated in a letter dated April 4, 2014, that JPF requested during a phone call with HFC's Collection Department that all correspondence be sent to the Florida address and that HFC must abide by JPF's request for mailing address changes since he remains a party on the account.

149.    FOGARTY resides in New Jersey and has always resided in New Jersey for all time periods related to and relevant to this cause action.

150.    By requesting HFC mail of all correspondence related to the mortgages to a Florida address is further indication that JPF was attempting to hide his wrongdoing from FOGARTY.

151.    Upon information and belief, HFC had been mailing all correspondence to JPF alone and communicating solely with JPF despite FOGARTY's name being on the account.

151.    HFC knew that the 2003 MORTGAGE was obtained without FOGARTY's consent.

152.    HFC failed to include FOGARTY in any of the payment deferrals or other matters related to the 2003 MORTGAGE because HFC knew it was obtained without FOGARTY's consent.

152.    HFC, CULLEN and JPF purposely and with malicious intent concealed the fact of the mortgages with FOGARTY for their own profit.

153.    HFC did provide FOGARTY with a copy of the Customer Identification Verification from the 2003 MORTGAGE transaction.  That document shows that for verification of CECILIA J. FOGARTY's identity, a State-issued driver's license from New Jersey with an expiration date of August 31, 2007 and a driver's license number matching that of FOGARTY's was allegedly presented at the 2003 closing to verify the identity of the person (CULLEN) who signed the 2003 MORTGAGE documents.

154.    There is no indication on the Customer Identification Verification form that the driver's license referenced on it was a photo driver's license.  A copy of the Customer Identification Verification form is attached hereto as **EXHIBIT I** and incorporated herein by reference.

155.    On August 2, 2011, FOGARTY was issued a renewal photo driver's license from the State of New Jersey that expires on August 31, 2015.

20

156.     On August 1, 2007, FOGARTY was issued a photo driver's license from the State of New Jersey that expired on August 31, 2011.  A copy of FOGARTY's 2007 to 2015 NJ Photo Driver's Licenses are attached hereto as **EXHIBIT J** and incorporated herein by reference.

157.     If  FOGARTY were to present her driver's license for verification for the 2003 MORTGAGE transaction on September 22, 2003, she would have presented the new photo driver's license that she obtained and was issued on August 1, 2007, not one that expired on August 31, 2007.

158.     The identification that was presented at the September 22, 2003 closing was not presented by FOGARTY, but by CULLEN, who was impersonating FOGARTY.

159.     Since September 2008, when FOGARTY first gave a copy of her New Jersey photo Driver's License to HFC employee Jennifer Kerrick at HFC's Lakewood, New Jersey branch, HFC knew or should have known that the person who signed the mortgage documents was not FOGARTY, but someone who stole FOGARTY's identity in order to fraudulently obtain profit.

160.     At all times relevant to the action herein, HFC failed identify or acknowledge that there was a problem with the identification presented to HFC at the mortgage closings compared to the identification FOGARTY presented to HFC despite the fact that they had a copy of FOGARTY's New Jersey photo Driver's License since September, 2008.

161.     Secondary identification presented for CECILIA J. FOGARTY at the 2003 MORTGAGE closing as indicated on HFC's Customer Identification Verification were a Vehicle Registration Card.

162.     New Jersey Vehicle Registration Cards bear no photograph of their holders.

163.     Additional secondary identification presented for CECILIA J. FOGARTY at the 2003 MORTGAGE closing was a Visa Credit card with an expiration date of September, 2005 and issued by Fleet Bank which bears no photograph of FOGARTY.

164.     FOGARTY never had a Visa Credit card issued to her by Fleet Bank.

165.     Bank of America acquired Fleet Bank in 2004.

166.     Upon receiving a copy of the Customer Identification Verification document from HFC, FOGARTY requested and obtained a fraud investigation from Bank of America related to the aforementioned Fleet Card.

167.     FOGARTY received a letter dated June 18, 2014 from Bank of America stating that Bank of America determined was opened fraudulently.  See June 18, 2014 letter from Bank of America attached hereto as **EXHIBIT K** and incorporated herein by reference.

168.     At various times, FOGARTY advised the credit reporting agencies of the fraud perpetrated upon her and that she was the victim of identity theft.  FOGARTY is in the process of obtaining proofs of the reporting of the identity theft and Fraud Alerts she facilitated being placed on her credit reports at the time of the filing of this action.

169.     Again, on January 15, 2014, a Fraud Alert was placed on her account through Transunion.

170.     Despite FOGARTY's requests, FOGARTY's credit reports still include the 2003 MORTGAGE as an account under her name and that it is in a derogatory status, late, etc.

171.     As of January 14, 2014, FOGARTY'S credit score dropped from 869 to 716 since October, 2014 due to the reporting by HFC of non-payment on the 2003 MORTGAGE account.

172.     A June 6, 2014 CALIBER Mortgage Statement addressed to FOGARTY and JPF at the Property states that the past due amount is $13,006.64 for the 2003 MORTGAGE.

173.     Further, the most current Transunion credit report, dated July 10, 2014, shows derogatory reporting related to the 2003 MORTGAGE in October, 2013, November, 2013 and December, 2013.

174.     As of July 15, 2014, Experian, Equifax and TransUnion were all showing the 2003 MORTGAGE account as open, and at least 60 days past due.

175.     The only account that shows as delinquent on FOGARTY's three credit reports is the 2003 MORTGAGE.

176.     Upon information and belief, HFC failed to file any Suspicious Activity Report (SAR) at any time relevant to the mortgage transactions as a result of the identity theft and fraud FOGARTY reported to HFC.

177.    The reports FOGARTY made to HFC as suspicious transactions relevant to a possible violation of law or regulation or involved the use of HFC to facilitate JFP and CULLEN's fraudulent acts and theft of FOGARTY's identity.

178.    Within 30 days after a loan or finance company becomes aware of a suspicious transaction, failure to file  an SAR with the Financial Crimes Enforcement Network (FinCEN) within thirty days after a loan or finance company violates the Bank Secrecy Act (BSA), 12 U.S.C. 1829b, 12 U.S.C. 1951–1959, and 31 U.S.C. 5311–5314 and 5316– 5332.

179.    HFC is a non-bank residential mortgage lenders and originator (''RMLO'') included in the definition of loan or finances companies that are subject to the BSA.

180.    HFC failed to comply with applicable standards of care required by law.

181.    Despite FOGARTY's requests, HFC has failed to acknowledge the fraud and continued to threaten FOGARTY with foreclosure of the 2003 MORTGAGE for nonpayment.   See attached NOTICE OF INTENTION TO FORECLOSE attached hereto as **EXHIBIT L** and incorporated herein by reference.

## AGREEMENTS BETWEEN JPF AND FOGARTY

182.    Per an Agreement ("AGREEMENT") between FOGARTY and JPF dated June 9, 2011, duly signed by FOGARTY and JPF and notarized, JPF acknowledged that he, without authorization or consent of FOGARTY applied for and accepted the 2003 MORTGAGE.   See AGREEMENT attached hereto as **EXHIBIT M** and incorporated herein by reference.

183.    The AGREEMENT also states that JPF agreed that he shall be solely responsible for the monthly payment of the 2003 MORTGAGE and its associated fees and make all efforts to apply to HFC to assume the full remaining balance of the mortgage regardless of his ownership interest and cooperate in FOGARTY'S effort to seek release from the 2003 MORTGAGE based upon the fact she did not authorize or consent to the 2003 MORTGAGE.

184.    The AGREEMENT also states that JPF guarantees that he has not encumbered the title to the Property with liens of any kind and agrees that if he has done so or encumbered the title to the Property in any way, he shall be responsible to remove such liens.

185.    The AGREEMENT states that JPF shall be responsible to pay the Property real estate taxes and homeowners insurance premiums.

186.    The AGREEMENT states that the AGREEMENT may be specifically enforced in the Superior Court of New Jersey and that if an action to enforce the AGREEMENT is brought, the other party will make no objection on the ground that there is an adequate remedy of law.

187.    The AGREEMENT states that all remedies provided by law and all remedies provided in the AGREEMENT for enforcement of the AGREEMENT shall be deemed to be cumulative and the exercise of one remedy shall not bar or prevent the pursuit of any other remedies and either party may elect to pursue such remedies simultaneously and the exercise of a remedy one or more times shall not exhaust its use or prevent further pursuit of such remedy.

188.    The AGREEMENT states that each party agrees to pay and to save and hold harmless the other party from any and all reasonable attorneys' fees, costs and legal expenses that either may sustain or incur or become liable or answerable or shall pay upon as a result of the default or breach by the other of any of the terms or provisions of this Agreement.

189.    The AGREEMENT requires JPF to deed the Property to FOGARTY in return for his having taken the funds in FOGARTY's savings account and her small business checking account.

190.    JPF did grant FOGARTY the Property by Quitclaim Deed referenced in paragraph 1 hereinabove.

191.    The AGREEMENT was amended by an Addendum and Amendments Agreement dated July 15, 2013 ("AMENDED AGREEMENT") to include that JPF that the AGREEMENT required him to pay all the real estate taxes on the Property, that JPF acknowledged that subsequent to the date of the AGREEMENT, JPF inappropriately and without authorization took one of FOGARTY's checks, made it

out for $20,305.14 and forged her name while FOGARTY was out of town. The AMENDED AGREEMENT is attached hereto as **EXHIBIT N** and incorporated herein by reference.

192.     Despite the AGREEMENT and AMENDED AGREEMENT, JPF has failed to perform any of the other terms of the AGREEMENT other than Deed the Property to FOGARTY.

193.     Both the AGREEMENT and the AMENDED AGREEMENT form FOGARTY and JPF's Agreement that is being filed in conjunction with FOGARTY's divorce action which is being filed contemporaneously herewith.

194.     Nothing herein shall be deemed to waive any of FOGARTY's rights to include the AGREEMENT or the AMENDED AGREEMENT as part of and in the pending divorce action as part of any Equitable Distribution Order or QDRO.

## COUNT ONE

## RESCISSION OF THE 2003 MORTGAGE

195.     Plaintiff repeats each and every allegation set forth hereinabove as if set forth fully herein.

196.     The 2003 MORTGAGE remains a lien on the Property despite FOGARTY's request that it be removed.

197.     FOGARTY never executed or received any documents for signature before, during or after the mortgage transaction, including but not limited to any Notice of Rescission or Truth in Lending Statement.

198.     FOGARTY advised HFC that she did not consent to the 2003 MORTGAGE on many occasions since her discovery of the 2003 MORTGAGE.

199.     Since FOGARTY was never presented with or sign any mortgage documents including, but not limited to, a Notice of Right to Cancel or Truth in Lending Statement, no statute of limitations has run or began to run that would estop FOGARTY from canceling the 2003 MORTGAGE.

200.    Pursuant to 15 U.S.C.§ 1635 and Regulation Z § 226.23, FOGARTY is entitled to the remedy of rescission of the 2003 MORTGAGE loan secured by her principal residence, that was not used to buy or build the residence .

201.    As mentioned hereinabove, none of the mortgage transactions were purchase money transactions.

202.    Pursuant to 15 U.S.C. 1635(f), FOGARTY has an extended right to rescind, up to three years after the date of consummation of the transaction.

203.    FOGARTY never consummated any of the mortgage transactions.

204.    The fact that FOGARTY never was presented with a Notice of Right to Cancel or a Truth in Lending Statement for signature by HFC is a material error by HFC.

205.    The basic statute of limitations for seeking damages for civil liability under TILA actions is one year. (15 USC § 1640(e)).

206.    Any applicable statute of limitations on civil damages under TILA have been tolled by Defendants' continuing, knowing, active and fraudulent concealment of the facts alleged herein.

207.    Despite FOGARTY's diligence, she did not nor could she reasonably discover and was prevented from discovering the wrongdoing committed by Defendants.

208.    HFC paid no money to FOGARTY or to any of FOGARTY's creditors in return for the mortgages JPF and CULLEN executed.

209.    HFC has taken advantage by virtue of its superior bargaining power to deny FOGARTY the relief FOGARTY has requested.

210.    The financial detriment to FOGARTY as a result of Defendants' actions is extreme.

211.    HFC and JPF should not benefit from its failure to ensure that the mortgages were not fraudulently obtained to the detriment of FOGARTY.

212.    To make FOGARTY's Property subject to the 2003 MORTGAGE and make FOGARTY liable on a debt to which she did not consent would be unconscionable.

213.    There is no adequate remedy at law.

214.     It would be unconscionable and inequitable for LSF8 and CALIBER to maintain 2003

MORTGAGE as a lien against the Property and to enforce its terms against FOGARTY who took no part

in the mortgage transactions and obtained no financial gain from the transactions.

215.     The fact that the 2003 MORTGAGE is a lien on FOGARTY's Property and was given to HFC

without her consent or knowledge is a material part of the mortgage transactions.

216.     HFC's own mistake or negligence in granting the mortgage on the Property without obtaining

property identification of the signers of the documents is the cause of any loss that may result from

FOGARTY's relief being granted.

217.     No prejudice would result to Defendants other than what they caused upon themselves, if the

requested relief herein is granted; whereas, Plaintiff would be prejudiced if rescission were not permitted.

218.     There exist justifiable issues and/or controversies concerning the Property and the existence,

priority and enforceability of the MORTGAGE lien or against the specific Property.

219.     Antagonistic claims concerning the Property and the existence, priority and enforceability of the

MORTGAGE lien or intended to be created against the Property exist, and litigation is imminent or

inevitable.

220.     A declaration by the Court would serve to terminate the controversy or controversies existing and

remove the uncertainty existing.

221.     Plaintiff is an interested person within and is entitled to seek and obtain a judgment removing

Plaintiff from the 2003 MORTGAGE and removing the property from the lien of the 2003 MORTGAGE.

WHEREFORE, Plaintiff demands judgment

A.     ORDERING HFC to pay punitive and compensatory damages;

B.     ORDERING rescission of the 2003 MORTGAGE nunc pro tunc to the date of its recording;

C.     ORDERING LSF8 and CALIBER to remove the 2003 MORTGAGE as a lien against the

Property nunc pro tunc to the date of its recording;

27

D.      ORDERING LSF8 and CALIBER Defendants to remove Plaintiff's name from the 2003 MORTGAGE;

E.      ORDERING HFC, LSF8 and CALIBER pay Plaintiff's attorneys fees and costs of suit;

F.      ORDERING the Clerk of Burlington County record a conformed copy of the Final Judgment entered in this matter in the names of the parties hereto and in the manner appropriate to the 2003 MORTGAGE.

H.      ORDERING such other and further relief as the Court deems just and equitable.

## COUNT TWO

## TORTIOUS INTERFERENCE WITH FOGARTY'S PROSPECTIVE ECONOMIC ADVANTANCE

222.    Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

223.    FOGARTY's credit rating and history was damaged or destroyed by HFC's failure to request that the 2003 MORTGAGE be deleted as a part of her credit history; remove her name from the 2003 MORTGAGE and remove it as a lien against the Property.

224.    FOGARTY's credit rating and history are being damaged or destroyed by CALIBER's failure to request that the 2003 MORTGAGE be deleted as part of her credit history, remove her name from the 2003 MORTGAGE and remove it as a lien against her property.

225.    FOGARTY was and is unable to obtain credit as a result of HFC and CALIBER's failure to requested that the 2003 MORTGAGE be deleted as part of her credit history, remove her name from the 2003 MORTGAGE and remove it as a lien against the Property.

226.    HFC and CALIBER have reported the late payment or nonpayment of the 2003 MORTGAGE to the three major credit reporting agencies which has damaged or destroyed and continues to damage or destroy FOGARTY's credit rating and history.

227.     FOGARTY has been denied credit due to the destruction of her credit and credit history.

228.    FOGARTY has been unable to purchase items she wanted to purchase on credit due to the destruction of her credit and credit history.

229.    FOGARTY has been forced to either not purchase items or purchase them with cash due to the destruction of her credit and credit history.

230.    Plaintiff had and has a reasonable expectation from a prospective contractual relationship with other creditors.

231.    The foregoing actions by HFC and CALIBER, without justification or excuse, have interfered with FOGARTY's economic advantage.

232.    There was a reasonable probability that FOGARTY would have been able to obtain economic advantages were it not for HFC and CALIBER's actions.

242.    As a direct and proximate result of the foregoing, FOGARTY has suffered  injuries including, but not limited to, humiliation, stress, anxiety, embarrassment, loss of prospective economic advantage, , costs and expenses related to protecting herself, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, inability to obtain credit, as well as fees and costs, including, without limitation attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment

   A.    ORDERING HFC and CALIBER to pay punitive and compensatory damages;

   B.    ORDERING CALIBER to remove Plaintiff's name from the 2003 MORTGAGE;

   C.    ORDERING HFC and CALIBER to correct the credit reporting they made against FOGARTY to remove all history of late payments and non-payments nunc pro tunc to the date of any and all such late payments or non-payments.

   D.    ORDERING HFC and CALIBER to pay attorney's fees and costs; and,

   E.    ORDERING such other and further relief as the Court deems just and equitable.

## COUNT THREE

## HFC, CALIBER AND LSF8'S VIOLATIONS UNDER RESPA (15 U.S.C. §2605) FOR FAILURE TO GIVE PROPER NOTICE OF TRANSFER OF SERVICING OR OWNERSHIP OF 2003 MORTGAGE

243. Plaintiff repeats each and every allegation hereinabove as if fully set forth herein.

244. FOGARTY had no knowledge of, did not receive nor sign any Transfer Servicing Disclosure Notice related to the 2003 MORTGAGE from HFC before, during or after the date of the 2003 MORTGAGE transaction.

245. FOGARTY received no notice from HFC, CALIBER or LSF8 of the transfer of ownership of the 2003 MORTGAGE other than the aforementioned NOTICE OF SALE (EXHIBIT B).

246. The aforementioned NOTICE OF SALE is dated June 4, 2014.

247. The NOTICE OF SALE states that the 2003 MORTGAGE loan was sold to LSF8 on May 3, 2014, 31 days after the date of the NOTICE OF SALE.

248. In violation of RESPA (15 U.S.C. §2605), HFC did fail to deliver a Notice of Transfer to FOGARTY not less than fifteen days before the effective date of the transfer of the servicing of the mortgage servicing loan;

249. In violation of RESPA, CALIBER and LSF8 did fail to deliver a Notice of Transfer to FOGARTY not more than 15 days after the effective date of the transfer.

250. As a direct and proximate result of the above-stated violations, Plaintiff has suffered damages in an amount to be determined at trial.

251. RESPA entitles Plaintiff to an amount equal to the sum of her actual damages as a result of the aforesaid violations.

252. HFC, CALIBER and LFS8's actions show a pattern or practice of noncompliance with the requirements of RESPA, which entitles Plaintiff to additional damages.

253.    RESPA entitles Plaintiff to costs and reasonable attorney's fees incurred in connection with this action, should Plaintiff be successful in this action.

254.    Were it not for the failure of HFC and CALIBER to comply with RESPA's servicing disclosure rules, FOGARTY would not have had to incur additional attorney fees in amending its Complaint to include LSF8 and CALIBER as Defendants for these and other violations.

WHEREFORE, Plaintiff demands against HFC and CALIBER:

> A.    ORDERING HFC and CALIBER pay Plaintiff's actual damages;
>
> B.    ORDERING Additional damages of $2,000.00 per violation against each HFC and CALIBER;
>
> C.    ORDERING HFC and CALIBER pay Plaintiff's attorney's fee and costs.
>
> D.    ORDERING any other and additional relief the Court deems proper.

### COUNT FOUR

### FRAUD AND INTENTIONAL MISREPRESENTATION AGAINST JPF AND CULLEN

255.    Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

256.    JPF and CULLEN did not disclose the fact that they had taken part in the mortgage transactions to FOGARTY.

257.    Beginning with the 2001 MORTGAGE and up until the date that FOGARTY discovered the existence of the 2003 MORTGAGE JPF concealed from FOGARTY that he mortgaged the Property in return for funds he received from HFC that paid off his credit card debts, paid off back taxes and gave him "cash out", among other things.

258.    Beginning WITH THE 2001 MORTGAGE and up until the date that FOGARTY discovered the existence of the 2003 MORTGAGE and the date that JFP divulged to him that CULLEN was his accomplice, JFP and CULLEN did not disclose the fact that they had taken part in the mortgage transactions to FOGARTY.

259.    JPF and CULLEN acted with malice aforethought intending to deceive FOGARTY so that they

could benefit financially from the mortgage transactions.

260.   In reliance upon JPF's fraudulent concealment, FOGARTY believed that the Property was free and clear of mortgage liens and that she had one-hundred percent equity in the Property.

261.   As a direct and proximate result of the foregoing deception, failure to disclose, and concealment of material fact(s) by JPF and CULLEN, FOGARTY has suffered  injuries including, but not limited to, humiliation, stress, anxiety, embarrassment, loss of equity in the Property, costs and expenses related to protecting herself, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, inability to obtain credit, as well as fees and costs, including, without limitation attorney's fees and costs.

262.   In the alternative, JPF and CULLEN made the misrepresentations negligently.

WHEREFORE, Plaintiff demands judgment

    A.  ORDERING JPF and CULLEN to pay punitive and compensatory damages;

    B.  ORDERING JPF and CULLEN pay Plaintiff's attorneys fees and costs of suit;

    C.  ORDERING such other and further relief as the Court deems just and equitable

**COUNT FIVE**

**SPECIFIC PERFORMANCE OF AGREEMENT AND AMENDED AGREEMENT**

**AGAINST JPF**

263.   Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

264.   JPF has failed to fulfill his obligations under the AGREEMENT and the AMENDED AGREEMENT.

WHEREFORE Plaintiff demands judgment

    A.  Specifically enforcing the terms of the AGREEMENT and AMENDED AGREEMENT's terms set forth herein against JPF;

    B.   ORDERING JPF to pay punitive and compensatory damages;

    C.  ORDERING JPF pay Plaintiff's attorneys fees and costs of suit;

D.   ORDERING such other and further relief as the Court deems just and equitable

## COUNT SIX

## FRAUD AGAINST JPF, CULLEN AND HFC

265.   FOGARTY repeats each and every allegation set forth hereinabove as if fully set

forth herein.

266.   HFC had actual knowledge that FOGARTY did not consent to, participate or benefit from

the mortgage transactions but could use the mortgage transactions to foreclose upon the Property

which had substantial equity, to recover amounts from FOGARTY that were obtained fraudulently

and through identify theft by CULLEN and JPF.

267.   That there was no mortgage debt liens on the Property prior to the 2001 MORTGAGE is a

material fact.

268.   HFC concealed material facts known to them but not to FOGARTY related to the mortgage

transactions and the identify theft and the fact that the mortgage transactions were consummated

without her consent or participation.

269.   HFC purposely misled FOGARTY to believe that she should be liable on the mortgage

debt and that HFC had completed thorough investigations into the fraud and identity theft issues

FOGARTY raised.

270.   JPF and CULLEN knew that FOGARTY did not take part in the mortgage transactions.

271.   JPF and CULLEN intended that FOGARTY rely upon the fact that there were no mortgage

debt liens on the Property and their concealment of the mortgage transactions so that they could

benefit financially from the mortgage transactions.

272.   HFC, JPF and CULLEN made the above-referenced false representations, concealments

and non-disclosures with knowledge of the misrepresentations, intending the induce FOGARTY's

reliance on them that she had no remedy to the situation, which the unsuspecting FOGARTY

justifiably relied upon, resulting in damage to FOGARTY.

273.    FOGARTY was unaware of the true facts.  Had FOGARTY known the true facts, she, would have taken legal action immediately to quiet title to the Property and otherwise assert her rights against HFC, CULLEN and JPF.

274.    FOGARTY is entitled to title to the Property that is the same as it was prior to the time the mortgage transactions took place, free and clear of the 2003 MORTGAGE.

275.    Defendants HFC and JPF continued to perpetrate the fraud initially wrought upon FOGARTY by only communicating regarding the mortgages and arranging past due payments, tax payments and forced place homeowners insurance with each other to the exclusion of FOGARTY.

276.    HFC, JPF and CULLEN acted with malice, fraud and/or oppression.

277.    FOGARTY had no reason to believe or know that JPF and CULLEN had mortgaged the Property and reasonably relied upon the misrepresentations and concealment of JPF and CULLEN.

278.    As a direct and proximate result of the foregoing, FOGARTY has suffered  injuries including, but not limited to, humiliation, stress, anxiety, embarrassment, loss of equity in the Property, costs and expenses related to protecting herself, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, inability to obtain credit, as well as fees and costs, including, without limitation attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment:

A.  ORDERING HFC, JPF and CULLEN to pay Plaintiff punitive, special and compensatory damages;

B.  ORDERING rescission of the 2003 MORTGAGE nunc pro tunc to the date of its recording;

C.  ORDERING that the 2003 MORTGAGE is removed as a lien against the Property nunc pro tunc to the date of its recording;

D.  ORDERING that FOGARTY's name is removed from the 2003 MORTGAGE nunc pro tunc to the date of its recording;

E.   ORDERING HFC, CULLEN and JPF to pay Plaintiff's attorneys fees and costs of suit;

G.   ORDERING such other and further relief as the Court deems just and equitable.

**COUNT SEVEN**

**SLANDER OF TITLE**

279.   Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

280.   HFC recorded the mortgages on the Property claiming to have liens against the Property that encumbered FOGARTY's interest in the Property.

281.   HFC recorded the mortgages on the Property that named FOGARTY as a "borrower" or "mortgagor" or otherwise liable for the payment of the mortgages.

282.   HFC recorded Lis Pendens on the Property (as identified in Paragraph 25(I) and 25(J) hereinabove) naming FOGARTY as a Defendant in foreclosure actions that identified FOGARTY as a "borrower" or "mortgagor" or as otherwise liable for the payment of the mortgages.

283.   These recordings, entered into with malicious intent, falsely cast doubt on the validity of FOGARTY's title to the Property.

284.   These recordings were reasonably calculated to cause harm to FOGARTY and directly resulted and were the proximate cause of damages to FOGARTY, including special damages.

285.   As a direct and proximate result of the foregoing, FOGARTY has suffered  injuries including, but not limited to, humiliation, stress, anxiety, embarrassment, loss of equity in the Property, costs and expenses related to protecting herself, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, inability to obtain credit, as well as fees and costs, including, without limitation attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment

A.   Awarding judgment in favor of Plaintiff for slander of title;

B.   ORDERING HFC to pay punitive and compensatory damages;

C.   ORDERING rescission of the 2003 MORTGAGE nunc pro tunc to the date of its recording;

D.   ORDERING that the 2003 MORTGAGE is removed as a lien against the Property nunc pro tunc to the date of its recording;

E.   ORDERING that Plaintiff's name be removed from the 2003 MORTGAGE nunc pro tunc to the date of its recording;

F.   ORDERING HFC to pay Plaintiff's attorneys fees and costs of suit;

G.   ORDERING the Clerk of Burlington County record a conformed copy of the Final Judgment entered in this matter in the names of the parties to the 2003 MORTGAGE and indexed in the manner appropriate to the 2003 MORTGAGE.

H.   Any such other and further relief as the Court deems just and equitable.

**COUNT EIGHT**

**VIOLATION OF RESPA (12 U.S.C. § 2605(e)(1)(A) AGAINST HFC**

286.   Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

287.   Between 2008 through 2014, FOGARTY requested documentation from HFC which HFC has failed to provide to FOGARTY.

288.   Between 2008 through 2014, FOGARTY has requested that HFC investigate the identity theft and mortgage fraud to no avail.

289.   As mentioned hereinabove, FOGARTY made complaint to the local criminal authorities as well as credit reporting agencies stating that she was the victim of identity theft and fraud.

290.   On February 7, 2014, FOGARTY, through her counsel, sent HFC a Qualified Written Request (QWR) meeting all the requirements of RESPA (12 U.S. Code § 2605(e)(1)(B)) requesting various documents related to the mortgage transactions, advising HFC again of the fraud and requesting that HFC remove FOGARTY as a borrower on the account correct any reporting of non-payment or late payments, case any collection activities against her on the account, report to all three major credit reporting agencies to remove the mortgage on her record and remove the mortgage as a lien on the property based upon the fraud.

291.    HFC received the Qualified Written Request on February 7, 2014 via fax and on February 10, 2014 by Certified Mail Return Receipt Requested.

292.    In violation of RESPA (12 U.S.C. § 2605(e)(1)(A)), HFC failed to provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) of February 10, 2014 nor did HFC take the requested action within such period.

293.    On or about February 24, 2014 HFC responded to the Qualified Written Request.

294.    In its response, HFC failed to provide all of the documentation requested, including but not limited to, copies of the Promissory Notes, Identity Verification Statements (except one for the 2003 MORTGAGE), photo identification collected at closing, front and back of all checks disbursed as a result of the transaction, Affidavits of Title and a complete explanation of and the documents that formed the basis for their decision that FOGARTY is liable for the loan payments.

295.    In violation of RESPA (12 U.S. Code § 2605(e)(2)(B)), HFC failed to conduct an investigation, failed to provide FOGARTY with a written explanation or clarification that included a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer.

296.    In violation of RESPA (12 U.S. Code § 2605(e)(2)(C)), HFC failed to provide the FOGARTY with a written explanation or clarification that included information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by it.

297.    In violation of RESPA (12 U.S. Code § 2605 (e)(2)(A)), HFC failed to  make appropriate corrections in the "account" of FOGARTY or transmit to FOGARTY a written notification of such correction after FOGARTY had advised credit reporting agency that she was the victim of identity theft and fraud as it relates to the 2003 MORTGAGE.

298.    In violation of RESPA, HFC did provide adverse information regarding any payment that is the subject of the QWR to any consumer reporting agency during the 60-day period beginning on the effective date of HFC receiving Plaintiff's qualified written request and relating to FOGARTY'S dispute regarding the alleged debt.

299. HFC did fail to complete the above requirements with regard to timeliness as well as content.

300. HFC's actions set forth above show a pattern of noncompliance with the requirements of RESPA. HFC is and was at all times relevant to the above-referenced violations, a servicer of the 2003 MORTGAGE.

WHEREFORE, Plaintiff demands judgment:

A. ORDERING HFC to pay Plaintiff actual damages;

B. ORDERING HFC to pay Plaintiff additional damages in the amount of $2,000.00 for each such failure to comply with the above-referenced laws;

C. ORDERING HFC to pay Plaintiff attorney's fees and costs; and,

D. AWARDING Plaintiff any other and further relief the Court deems just.

## COUNT NINE

### VIOLATIONS OF NJFCRA and FDCPA BY HFC AND CALIBER

301. Plaintiff repeats each and every allegations set forth above as if fully set forth herein.

302. In violation of 15 U.S.C. § 1692(e)(8), HFC and CALIBER did communicate to credit reporting agencies credit information regarding FOGARTY which they knew to be false.

303. In violation of FDCPA, (15 U.S.C. § 1692(e)(8)), HFC and CALIBER did fail to communicate to credit reporting agencies that FOGARTY disputed the debt of the 2003 MORTGAGE after FOGARTY had reporting the criminal and other agencies that she disputed the debt and that her identity was stolen.

304. In violation of FDCPA (15 U.S.C. § 1692e(11)) sent the hereinabove mentioned October 10, 2011 (EXHIBIT E) letter to FOGARTY without advising FOGARTY that HFC was a debt collector and that information obtained would be used for debtor collection purposes.

305. The persistence of noncompliance by HFC and CALIBER of its intentional and repeated conduct of reporting that FOGARTY had a mortgage with it to the credit reporting agencies was intentional, repeated on a monthly basis, egregious, not in good faith and not the result of any bona fide error.

WHEREFORE, Plaintiff demands judgment

    A.   ORDERING HFC and CALIBER to pay Plaintiff's actual damages;

    B.   ORDERING HFC and CALIBER to pay Plaintiff additional damages of $1000 per each month the erroneous reporting of a debt owed to HFC or LSF8 by FOGARTY and identified as a debt on FOGARTY's credit report and for HFC's for any derogatory reporting or late payment reporting pursuant to 15 U.S.C. 1692(k);

    C.   ORDERING HFC and CALIBER pay Plaintiff additional damages of $1,000.00 pursuant to 15 U.S.C. 1692(k); and,

    D.   ORDERING HFC and CALIBER pay Plaintiff's costs and reasonable attorney's fees.

## COUNT TEN

## QUIET TITLE

306.    Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

307.    The 2003 MORTGAGE is not valid because it was procured by fraud and identify theft and without the consent of FOGARTY.

308.    HFC failed to produce the Promissory Note which is the basis for the obligation.

309.    Since LSF8 does not hold the Promissory Note, there is no money that is owed to LSF8 by FOGARTY.

310.    The 2003 MORTGAGE is securing an obligation that does not exist.

311.    N.J.S.A 2A:62-1 allows FOGARTY to bring suit for clarification of her title to the Property.

312.    HFC has threatened foreclosure which could shroud FOGARTY's title to the Property.

313.    Lis Pendens as set forth in Paragraphs 25(I) and 25(J) hereinabove remain as clouds on FOGARTY's title to the Property.

314.    The 2003 MORTGAGE remains as a cloud on FOGARTY's title to the Property.

WHEREFORE, Plaintiff demands judgment:

    A.  ORDERING that FOGARTY holds title to the Property in fee simple absolute;

B.   ORDERING that FOGARTY's title to the Property is free and clear of the lien of the 2003 MORTGAGE and the Lis Pendens referred to in Paragraphs 25(I) and 25(J) hereinabove;

C.   ORDERING that FOGARTY is not liable on any obligation to LSF8;

D.   ORDERING that the Lis Pendens referred to hereinabove and the 2003 MORTGAGE are null and void and of no force and effect;

E.   ORDERING the Clerk of Burlington County to record a conformed copy of the Final Judgment in this matter in the names of the parties to the 2003 MORTGAGE and index the Final Judgment in the manner appropriate to the 2003 MORTGAGE;

F.   ORDERING HFC to pay Plaintiff's attorney's fees and costs; and

G.   Awarding any other and further relief the Court deems just.

## COUNT ELEVEN

## UNJUST ENRICHMENT

315.   Plaintiff FOGARTY repeats each and every allegation set forth in Paragraph 1 through 210 of this Complaint as if fully set forth herein.

316.   JPF realized significant financial gains from the mortgage transactions.

317.   FOGARTY realized no gain from the mortgage transactions

318.   JFP should not be permitted to unjustly enrich himself at the expense of FOGARTY.

319.   JFP should not be permitted to have retained and used those financial benefits without paying FOGARTY compensation.

WHEREFORE, Plaintiff demands judgment

A.   ORDERING JPF to pay punitive and compensatory damages;

B.   ORDERING Defendants pay Plaintiff's attorneys fees and costs of suit;

C.   ORDERING such other and further relief as the Court deems just and equitable

**COUNT TWELVE**

**SPECIFIC PERFORMANCE AGAINST CALIBER**

320.    Plaintiff FOGARTY repeats each and every allegation set forth hereinabove as if fully set forth herein.

321.    HFC wrongfully failed to remove the property from the lien of the 2003 MORTGAGE and the aforementioned Lis Pendens.

322.    CALIBER is the alleged current servicer of the 2003 MORTGAGE and as such is responsible for cancelling and discharging the 2003 MORTGAGE on behalf of LSF8.

323.    Pursuant to New Jersey Court Rule 4:59-2, "if a judgment or order directs a party to perform a specific act and the party fails to comply within the time specified, the court may direct the act be done at the cost of such defaulting party by some other person appointed by the court, and the act when so done shall have like effect as if done by the defaulting party".

WHEREFORE, Plaintiff demands judgment

A.      ORDERING CALIBER to Discharge and Cancel the 2003 MORTGAGE of record;

B.  ORDERING HFC to Discharge and Cancel the aforementioned Lis Pendens of record;

C.      ORDERING, upon CALIBER's failure to Discharge and Cancel the 2003 MORTGAGE and HFC's failure to Discharge and Cancel the aforementioned Lis Pendens of record, that FOGARTY, or FOGARTY's designated agent shall execute a Discharge and Cancellation of the 2003 MORTGAGE and the aforementioned Lis Pendens and that said Discharges and Cancellations will have the same effect as if they were executed by CALIBER and HFC, respectively;

D.      ORDERING the Clerk of Burlington County record the Discharges and Cancellations of the 2003 MORTGAGE and the aforementioned Lis Pendens along with a conformed copy of the

Final Judgment entered in this matter in the names of the parties to the 2003 MORTGAGE and indexed in the manner appropriate to the 2003 MORTGAGE; and,

E.      ORDERING any other and further relief the Court deems proper including attorney's fees and costs.

## COUNT THIRTEEN

## INDEMNIFICATION

324.    Plaintiff repeats each and every allegation set forth in Paragraph 1 through 219 of this Complaint as if fully set forth herein.

325.  FOGARTY denies liability of any nature to HFC, LSF8 or CALIBER but, if such liability is imposed, it is the result of the acts of JPF and CULLEN.

WHEREFORE, Plaintiff demands judgment

A.  ORDERING that JPF and CULLEN, jointly and severally, fully indemnify FOGARTY for any sums to which FOGARTY may be liable to HFC, LSF8 and CALIBER together with interest;

B.  ORDERING JPF and CUILLEN, jointly and severally, pay FOGARTY's attorney's fees and costs; and,

C.  ORDERING such other and further relief as the Court deems just.

## COUNT FOURTEEN

## IDENTITY THEFT

326.    Plaintiff repeats each and every allegations set forth hereinabove as if fully set forth herein.

327.    As part of, and a condition to, the mortgage transactions, HFC required the consent or signature of FOGARTY in order to establish the 2003 MORTGAGE.

328.    By and through HFC's negligence and/or mistake, HFC did not obtain the consent or signature of FOGARTY to the mortgage transactions.

329.    By virtue of HFC's negligence and/or mistake, it disbursed proceeds to JPF in return for obtaining the mortgages on the Property without FOGARTY's consent.

330.  JPF and CULLEN appropriated and used FOGARTY's identity in some form or fashion commonly referred to as "identity theft" in order to induce HFC to extend credit in HFC's mistaken belief that it was extending credit to FOGARTY and to otherwise cause HFC to believe that FOGARTY was obligated to HFC.

331.  JPF and CULLEN unlawfully appropriated the identity of FOGARTY and used that identity to deceive others including HFC into falsely believing HFC was dealing with FOGARTY.

332.  JPF and CULLEN fraudulently misrepresented that CULLEN was in fact FOGARTY in order to profit financially.

333.  HFC was complicit in JPF and CULLEN's identity theft and fraudulent misrepresented by virtue of its failure to collect proper identification that would show that CULLEN was not in fact FOGARTY.

334.  FOGARTY did suffer an ascertainable loss of value in the Property as a result of CULLEN using her personal identifying information, namely, a copy of a Driver's License purporting to be FOGARTY's Driver's License and the aforementioned Fleet Visa Card in the name of FOGARTY.

335.  As a direct result and consequence of the acts of HFC, JPF and CULLEN and proximately caused thereby, FOGARTY has suffered and sustained a false claim of indebtedness to HFC in the amount of the 2003 MORTGAGE which is not her debt and remains a cloud on title to FOGARTY's Property.

336.  As a direct result and consequence of the acts of HFC, JPF and CULLEN and proximately caused thereby, FOGARTY has been forced to retain counsel and bring this action to clear her credit and the title to the Property, has suffered and sustained nervous shock, anxiety, stress humiliation and embarrassment, has suffered and sustained impairment of her public reputation and of her credit worthiness, by way of example and without limitation, by suffering the existence of the Lis Pendens filed by HFC to be of public record and on her credit report, and has otherwise been damaged.

337. N.J.S.A. 2C:21-17.4 provides FOGARTY with the right to bring this action against JPF and FOGARTY for damages in an amount three times the value of all costs incurred by FOGARTY as a result of JFP AND CULLEN's criminal activity.

WHEREFORE, Plaintiff demands judgment:

A. ORDERING HFC, JPF and CULLEN to pay FOGARTY such sums as will compensate her for her damages together with interest, punitive damages, attorney's fees and costs;

B. ORDERING CULLEN and JFP to pay FOGARTY damages in an amount three times the value of all costs incurred by FOGARTY as a result of CULLEN's theft of FOGARTY's identity; and,

C. ORDERING any other and further relief the Court deems proper including attorney's fees and costs.

## COUNT FIFTEEN

## HFC's and CALIBER'S UNAUTHORIZED PAYMENT OF PROPERTY TAXES AND JPF's FAILURE TO PAY PROPERTY TAXES

338. Plaintiff repeats each and every allegation set forth hereinabove as if fully set forth herein.

339. FOGARTY paid the fourth quarter 2013 and the first quarter 2014 real estate taxes for the Property.

340. On May 1, 2014, FOGARTY mailed the second quarter 2014 real estate tax payment for the Property to the Westampton Township Tax Collector's office.

341. Subsequently, the Westampton Township Tax Collector told FOGARTY that HFC had paid the second quarter 2014 real estate taxes for the Property on or about April 28, 2014.

342. FOGARTY requested that the Tax Collector return the funds to HFC and use the tax payment FOGARTY had given the Tax Collector.

343.    Despite this request, the Tax Collector told FOGARTY she could not return the tax payment to HFC, but could take FOGARTY'S funds to pay the taxes but would take the funds to apply to future tax bills.

344.    None of the documentation provided by HFC to FOGARTY indicates that there was a tax escrow to be held by HFC to pay the real estate taxes on the Property.

345.    Although the 2003 MORTGAGE may contain a term that permits HFC to pay taxes for the Property if they are past due, the real estate taxes were not past due, FOGARTY was not a party to the 2003 MORTGAGE.

346.    HFC never notified FOGARTY that there were any delinquencies on any taxes on the Property.

347.    In April, 2013, HFC added $3,197.96 to the 2003 MORTGAGE balance for back taxes HFC paid.

348.    In May, 2013, HFC added $4,979.69, $2,469.67 and $1,964.55 to the 2003 MORTGAGE to pay off tax liens placed on the property.

349.    It states on the aforementioned June 16, 2014 Mortgage Statement FOGARTY received from CALIBER that on 06/06/2014, "Taxes Paid on Your Behalf" were $8,207.42.

350.    The fact that HFC and CALIBER paid these amounts resulted in an increase in the monthly payment amount and the balance on the 2003 MORTGAGE that is an invalid lien on FOGARTY's Property.

351.    JPF is responsible for making the real estate tax payments pursuant to the aforementioned AGREEMENT AND AMENDED AGREEMENT but has failed to do so.

352.    HFC and CALIBER have wrongfully paid the real estate taxes on the Property, causing FOGARTY to lose additional equity in her Property and adding to the indebtedness HFC wrongfully attributes to FOGARTY.

353.     FOGARTY, upon JPF's failure to pay the real estate taxes on the Property, pays the real estate taxes on the Property.

355.     HFC had and CALIBER has no right to pay real estate taxes on the Property.

WHEREFORE, Plaintiff demands judgment:

A.     ORDERING that CALIBER is permanently enjoined from making real estate tax payments for the Property;

B.     ORDERING HFC to request reimbursement of the second quarter 2014 tax payment made by HFC to HFC.

C.     ORDERING CALIBER to advise the Westampton Township Tax Collector to remove its name from the tax rolls as a mortgagee on the Property and remove its name from any notifications related to the taxes on the Property;

D.     ORDERING JPF to pay all outstanding and future tax bills on the Property; and,

E.     ORDERING any other relief the Court deems just.

## COUNT SIXTEEN

## RECKLESS AND INTENTIONAL INFLICTION OF EMOTION HARM AGAINST JPF, CULLEN and HFC

356.     Plaintiff repeats each and every allegation as set forth above as if fully stated herein.

357.     JPF and CULLEN desired to inflict severe emotional distress on FOGARTY or knew that such distress was certain, or substantially certain, to result from his aforementioned actions.

358.     JPF's aforementioned actions were intended or calculated to cause or he knew they would probably would cause severe emotional distress to FOGARTY.

359.     JPF, CULLEN and HFC's aforementioned actions were made with a deliberate disregard or a reckless indifference of a high degree of probability that they would cause emotional distress to FOGARTY.

360.     HFC is liable for the vicarious acts of its employees who directly and proximately caused FOGARTY's severe emotional distress.

361.     As a direct and proximate result of JPF, CULLEN and HFC's actions, FOGARTY has suffered extreme and severe emotional distress, frustration, humiliation, indignation, wounded pride, despair, anxiety, stress, depression and fright

362.     By way of example, FOGARTY has been in constant fear that she would lose her home which she had paid off in full due to JPF's actions and HFC's continued denial of her claims and threat of foreclosure.

363.     By way of example only, FOGARTY was and is embarrassed and stressed out that people who know her can see from the Lis Pendens that are of public record that her Property was in foreclosure and was embarrassed to find out from the tax collector and face the tax collector regarding the fact that her Property taxes were not paid or were paid by HFC instead of JPF or herself.

364.     By way of example only, FOGARTY has been in constant fear that a publication regarding a pending foreclosure or tax sale will be or has been published in the local paper and ruin her reputation and standing in her community.

365.     It was reasonably foreseeable to JPF, CULLEN and HFC that their aforementioned actions did and would shock the conscience and cause severe emotional distress to any reasonable person like FOGARTY.

366.     The fact that FOGARTY was diagnosed with and treated with cancer, assisting her ailing mother with her illness and then mourning the loss of her mother, coming to terms with the horrific criminal actions, arrest, conviction and incarceration of the man she was married to for over thirty-five years, the demise of her marriage, the loss of the fortune and equity in her Property that she had amassed during her lifetime all during the time period within which she was dealing with the discovery of and attempting to

get HFC to rectify the 2003 MORTGAGE situation added to the severe distress FOGARTY experienced and experiences to this very day.

367.    HFC and FOGARTY both had power and control over FOGARTY in a manner that made it that much more difficult for her to understand and deal with the aforementioned facts without suffering severe emotional distress.

368.    FOGARTY experienced much despair and constant frustration while attempting to figure out just what JPF and CULLEN did to her and at the same time getting absolutely no relief from HFC, whose reckless disregard for its actions caused her great harm.

369.    The aforementioned acts of HFC, JPF and CULLEN were made negligently if not recklessly or intentionally.

WHEREFORE, Plaintiff demands judgment:

A.   ORDERING that JPF, CULLEN and HFC pay Plaintiff compensatory and punitive damages;

B.   ORDERING that JPF, CULLEN and HFC pay Plaintiff's attorney's fees and costs; and,

C.   ORDERING any other and further relief the court deems just.

## COUNT SEVENTEEN

## PER SE NEGLIGENCE AGAINST HFC

370.    Plaintiff repeats each and every allegation as set forth above as if fully stated herein.

371.    HFC's ongoing violation of and failure to adhere to the mandates of the aforementioned federal laws and the duty of care established in those federal laws.

372.    HFC breached the duty of care owed to FOGARTY under those federal laws.

373.    The direct and proximate result of HFC's aforesaid violations caused harm to FOGARTY as detailed hereinabove which those federal laws were intended to prevent.

374.    By way of example, HFC's failure to comply with the duties set forth in the FDCPA has injured FOGARTY's credit rating.

WHEREFORE Plaintiff demands judgment:

A.  ORDERING HFC to pay Plaintiff compensatory damages;

B.  ORDERING HFC to pay Plaintiff punitive damages;

C.  ORDERING HFC to pay Plaintiff's attorney's fees and costs.

## LOCAL RULE 11.2 CERTIFICATION

I certify that the matter in controversy is not the subject of any other action pending in any court except insofar as the Agreement and Amended Agreement hereinabove mentioned are part of a divorce action being Plaintiff FOGARTY and Defendant JPF which is pending in the Superior Court of New Jersey, Chancer Division/Family Part, Burlington County nor is the matter in controversy the subject matter of any pending arbitration or administrative proceeding.

LAW OFFICE OF TINA NIELSEN AMODEO, L.L.C.

Dated: __08/07/2014_____          BY:  s/Tina Nielsen Amodeo_____
                                             Tina Nielsen Amodeo, Esq.
                                             Attorney for Plaintiff

49