[Doc. No. 191]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CECILIA J. FOGARTY,

              Plaintiff,

   v.

HOUSEHOLD FINANCE CORPORATION
III, et al.,

           Defendants.

Civil No. 14-4525 (RBK/JS)

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT HOUSEHOLD FINANCE CORPORATION'S
MOTION TO ENFORCE SETTLEMENT**

This matter is before the Court on the "Motion to Enforce Settlement" filed by Defendant Household Finance Corporation ("HFC"). [Doc. No. 191]. The Court received plaintiff's opposition [Doc. No. 195], HFC's reply [Doc. No. 196], and exercises its discretion to issue this Report and Recommendation without oral argument. Fed. R. Civ. P. 78; L. Civ. R. 78.1. This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1)(B).[1]

---

[1] The Court is issuing a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B) in light of the dispositive nature of the proposed Order. See Brown v. Collect It, LLC, C.A. No. 13-452 (JBS/AMD), 2014 WL 3889205, at *2 (D.N.J. Aug. 7, 2014)(noting the dispositive nature of a motion to enforce a settlement agreement); Saber v. FinanceAmerica Credit Corp., 843 F.2d 697, 702-03 (3d Cir. 1988) (holding that an Order to enforce a

For the reasons to be discussed, the Court recommends HFC's motion be granted and that the first proposed Order included with HFC's motion [Doc. No. 191-2] be entered.[2]

<u>Background</u>

Plaintiff's complaint was removed to federal court on July 17, 2014. [Doc. No. 1]. Plaintiff's amended complaint was filed on August 7, 2014 [Doc. No. 5] and her second amended complaint was filed on January 15, 2016. [Doc. No. 66]. This lawsuit concerns real property located at 12 Lancaster Court, Westampton, New Jersey (hereinafter the "property") that plaintiff and her then husband, John Fogarty, purchased in 1979. Plaintiff and Fogarty were divorced in mid-2015. Plaintiff generally alleges that her signatures on three mortgages encumbering the property were forged by defendants Fogarty and Dora Cullen. The third mortgage remains of record and is held by HFC. <u>See</u> HFC's Brief at 3, Doc. No. 191-1. Plaintiff's second amended complaint asserts three claims against HFC. In Count I, plaintiff alleges violations under RESPA. In Count IV, plaintiff

---

settlement agreement, which concerns the remedy of specific performance, is "dispositive of the substantive rights of the parties").

[2] HFC submitted alternative Orders. The Court recommends the first proposed Order be entered. This Order requires plaintiff to execute the Settlement Agreement and Release attached as Exhibit 14 to HFC's motion. Plaintiff has not expressed an objection to the proposed language other than the payment of her attorney's fee and costs. The issue is discussed herein in detail.

alleges violations under FCRA. In Count V, plaintiff asserts a quiet title claim seeking to declare the subject mortgage void and enforceable based on forgery. Id.

HFC's motion seeks to enforce a purported settlement agreement between plaintiff and HFC. HFC alleges plaintiff's counsel agreed to settle plaintiff's claims against HFC on August 25, 2017, when plaintiff's counsel stated as follows in an email that date to defense counsel:

> Mark,
>
> My client has responded as follows in acceptance HFC's settlement offer.
>
> "I confirm that I agree to accept the confidential settlement offer from HFC which includes the dismissing of their claims against me with prejudice, satisfying the mortgage and removing it from land records, fully deleting the trade lien (credit history) on my credit so that the mortgage does not show and the history of it does not show, and in return that I will dismiss my claims against them with prejudice."
>
> I appreciate that we have brought this matter to a close.
>
> We can work on the paper work when you wish to in the very near future.
>
> Please confirm receipt of this e-mail when you can.
>
> Regards,
>
> Tina

HFC's Motion, Exhibit 4.[3] Notably, the email does not state the payment of plaintiff's attorney's fees is part of the settlement or a condition to settling. A few minutes after plaintiff's email was sent defense counsel confirmed that plaintiff confirmed the settlement:

> Tina,
>
> Thanks for confirming our deal. We're glad that HFC and Ms. Fogarty were able to reach a resolution. We'll take a first crack at the settlement papers, and will try to get something over to you next week.
>
> Have a good weekend.

Id. In a letter to the Court on August 31, 2017, plaintiff's counsel again confirmed plaintiff settled with HFC:

> Dear Judge Schneider:
>
> I represent Cecilia Fogarty, the Plaintiff in the above-referenced action. As you are aware from the letter of August 28, 2017 from Household Finance Corporation's ("HFC") attorney, Philip A. Magen, Esq., John Fogarty and HFC have come to a settlement agreement. In addition, HFC and my client have come to a settlement agreement.

Exhibit 6. Again, plaintiff did not mention that the payment of plaintiff's attorney's fees was included as part of the settlement. Nor did plaintiff state settlement was contingent on the payment of plaintiff's fees.

On September 22, 2017, HFC sent a draft Settlement Agreement to plaintiff's counsel. Exhibit 7. When plaintiff's

---

[3] Hereinafter all numbered Exhibits shall refer to the exhibits attached to HFC's motion.

counsel sent HFC her lengthy comments on October 10, 2017 (Exhibit 8), she did not comment on ¶17 of the proposed Settlement Agreement that provided, "each of the parties shall bear their own attorney's fees and costs in connection with the litigation." Exhibit 7. HFC circulated another draft Settlement Agreement on October 12, 2017 (Exhibit 9) that also did not provide for HFC's payment of plaintiff's attorney's fees.[4]

Plaintiff's counsel confirmed in her October 19, 2017 email that HFC's payment of plaintiff's legal fees was not part of the settlement. ("I … have explained to [plaintiff] why HFC has agreed to the settlement but does not agree to pay her legal fees. I have told everyone in this matter that I have presented to Mrs. Fogarty what the content of the settlement is and why HFC does not agree to pay her legal fees." Exhibit 11.) On November 15, 2017, plaintiff's counsel advised HFC that plaintiff would not sign the settlement agreement unless HFC paid her legal fees. Exhibit 13. HFC's motion seeks to enforce its settlement agreement with plaintiff.

As discussed herein, plaintiff's counsel acknowledged in her opposition papers that the parties settled. In view of this

---

[4] Instead, ¶17 stated exactly the opposite: "Plaintiff and HFC, III hereby agree that they will not pursue recovery against each other of any attorneys' fees, costs, and expenses they incurred in connection with the matters set forth in the Settlement Agreement, including, but not limited to, the lawsuit and negotiations and preparation of this Settlement Agreement." Exhibit 9.

admission, plaintiff's defense to HFC's motion is hard to decipher. The crux of plaintiff's argument appears to be as follows:

> It is true that HFC counsel never suggested any willingness to pay Plaintiff's costs and legal fees. However, Plaintiff was and is firm in her belief that in return for dismissing her RESPA and FCRA claims, which may have entitled her to damages, legal fees and costs. Plaintiff's counsel communicated this to HFC at all times throughout the negotiations. This was an open issue. Plaintiff's rejection of the settlement without receiving attorney fees was a counteroffer to the Settlement Agreement and a rejection of its terms. HFC rejected the counteroffer.

Plaintiff's Brief ("PB") at 13-14, Doc. No. 195. Again, although not clear, plaintiff's position appears to be that she did not agree to settle with HFC because she made it known during the negotiation process that plaintiff "wished for HFC to pay her attorney's fees and costs." Id. at 16-17.

Discussion[5]

1.   General Principles Regarding Settlement Agreements

The issue the Court has to decide is whether plaintiff entered into a binding settlement agreement with HFC. Unfortunately, it is not unusual for a party to attempt to back out of a settlement agreement he or she orally entered into, with or without the assistance of counsel or the Court. This

---

[5] A motion to enforce a settlement agreement is generally treated as the same standard as a motion for summary judgment. Natale v. E. Coast Salon Servs., Inc., C.A. No. 13-1254 (NLH), 2016 WL 659722, at *2 (D.N.J. Feb. 17, 2016). As discussed herein, there are no genuine issues regarding any material facts relevant to the underlying issues.

Court has issued two recent decisions on the issue. See Vandergrift v. Pennsauken School District, et al., C.A. No. 12-7646 (JS), 2017 WL 6566139 (D.N.J. Dec. 22, 2017); Paredes v. City of Atlantic City, C.A. No. 15-2929 (JBS/JS), 2016 WL 2354568 (D.N.J. May 2, 2016). The general legal principles the Court has to apply are fairly straightforward and will be summarized.

The construction and enforcement of the parties' alleged settlement agreement is governed by principles of New Jersey contract law. Plymouth Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of Chicago, Ill., 378 F.2d 389, 391 (3d Cir. 1967); Pacific Alliance Grp. Ltd. v. Pure Energy Corp., C.A. No. 02-4216 (DRD), 2006 WL 166470, at *2 (D.N.J. Jan. 23, 2006). Under New Jersey law a settlement agreement between parties to a lawsuit is a separate and independent contract from the underlying dispute. Id. at *2 (citation omitted). "The burden is on the moving party [in this case HFC] to establish that the parties entered into a contract of settlement." LNT Merch. Co. v. Dyson, Inc., C.A. No. 08-2883 (SRC), 2009 WL 2169236, at *2 (D.N.J. July 21, 2009)(citing Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997)); United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997). A settlement agreement is a form of a contract and may be enforced even if it is not in writing. Pascarella v. Bruck, 190 N.J.

Super. 118, 124 (App. Div. 1983)("That the agreement to settle was orally made is of no consequence[.]").

New Jersey public policy favors settlements of litigation. See Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). However, notwithstanding the policy favoring settlements, a settlement "should not be enforced where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." McDonnell v. Engine Distributors, C.A. No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (citation and quotation omitted).

In order to have an enforceable settlement there "must be a 'meeting of the minds' for each material term to an agreement." Pacific Alliance, 2006 WL 166470, at *3 (citing Sampson v. Pierson, 140 N.J. Eq. 524 (N.J. Ch. 1947)). "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the [material] terms of a contract." Knight v. New England Mut. Life Ins. Co., 220 N.J. Super. 560, 565 (App. Div. 1987). The meeting of the minds requirement is an essential element to the valid formation of all contracts. Am. Furniture Mfg. Inc. v. Value Furniture & Mattress Warehouse, 2009 WL 88922, at *2 (N.J. Super. Ct. App. Div. Nov. 18, 2008). "[P]arties create an enforceable contract when they agree to the

essential terms and manifest an intent that the terms bind them." Baer v. Chase, 392 F.3d 609, 619 (3d Cir. 2004).

2.    Plaintiff and HFC Entered into a Binding Settlement Agreement

To be frank, the record in the case could not be clearer that plaintiff and HFC settled the case. This is evidenced in plaintiff's counsel's August 25, 2017 email to HFC's counsel stating that Ms. Fogarty confirmed she "agree[d] to accept the confidential settlement offer from HFC[.]" Exhibit 4. Plaintiff's counsel summarized the essential terms of the settlement which included the following:

1.    Dismissal of HRC's claims against plaintiff.

2.    HFC agreed to satisfy the subject mortgage upon payment to it of the required funds and to remove the mortgage as a lien against the property.[6]

3.    HFC would delete the tradeline on plaintiff's credit so that the subject mortgage did not show.

4.    Dismissal of plaintiff's claims against HFC.

Id. Plaintiff's counsel further confirmed the settlement when she wrote to HFC's counsel, "I appreciate that we have brought this matter to a close." Id. On the same day plaintiff acknowledged the parties settled, HFC's counsel confirmed that plaintiff's counsel confirmed the settlement. HFC wrote to plaintiff's counsel, "Thanks for confirming our deal. We're glad

---

[6] The money HFC intended to use for the mortgage payoff included payments from its title insurer, funds held in escrow by John Fogarty's former divorce attorney, and a small payment from John Fogarty.

that HFC and Ms. Fogarty were able to reach a resolution." Id. In addition, plaintiff's counsel confirmed in her August 31, 2017 letter to the Court that the parties settled: "HFC and my client have come to a settlement agreement." Exhibit 6.

Plaintiff misstates the record when she argues:

> Plaintiff's rejection of the settlement without receiving attorney fees was a counteroffer to the Settlement Agreement and a rejection of its terms. HFC rejected the counteroffer.

PB at 13-14. Plaintiff also misstates the record when she writes: "[a]t that time [9/23/17], Plaintiff had already advised HFC that the agreement was also subject to the resolution of the attorney fee issue." Id. at 15. Plaintiff never rejected HFC's August 25, 2017 settlement terms, nor did she make a counteroffer regarding attorney's fees. The record clearly indicates that plaintiff never conditioned a settlement on defendant's payment of plaintiff's attorney's fees.

Plaintiff argues her "counteroffer" operated as a rejection of the agreed upon settlement terms. PB at 22-23. However, plaintiff did not make a counteroffer on August 25, 2017. To the extent plaintiff argues her November 15, 2017 email (Exhibit 13) was a counteroffer, the argument is rejected. By November 15, 2017, the settlement terms were already agreed upon. Plaintiff cannot unilaterally void its settlement with HFC by making a belated request after the parties' settlement terms had been agreed upon.

Not only does plaintiff's counsel's email correspondence with HFC's counsel confirm the settlement, but plaintiff admits this occurred in her opposition to HFC's motion. For example, plaintiff's Brief contains the following admissions:

- "On 8/25/17, Plaintiff did agree to settle her claims against HFC with Plaintiff's counsel sending an email to HFC's counsel[.]" PB at 5.

- "[T]he settlement between Plaintiff and HFC provided for (1) satisfaction of the mortgage that is the subject of this action and removal of the mortgage as a lien against Plaintiff's property, (2) deletion of the tradeline for the subject mortgage so that it does not appear on Plaintiff's credit history, and (3) dismissal of Plaintiff's claims against HFC with prejudice." PB at 5-6.

- "The settlement did not include an agreement by HFC to reimburse the attorneys' fees and costs incurred by Plaintiff in connection with this lawsuit." PB at 6.

- "In the context of the negotiations, HFC never offered nor agreed to reimburse Plaintiff's litigation costs. Plaintiff did agree to settle her claims with HFC that relate to HFC the Subject Mortgage and her credit history, despite HFC not agreeing to reimburse her litigation costs." PB at 14.

- "Plaintiff's counsel did send a letter dated 8/31/17 to The Honorable Joel Schneider, which does state that Plaintiff and HFC came to a Settlement Agreement…." PB at 15.

- At the October 13, 2017 status conference before the Honorable Joel Schneider counsel for HFC represented that claims between HFC and Plaintiff had settled "without any objection from Plaintiff's counsel" and "Plaintiff's [counsel] confirmed that Plaintiff did reach agreement on the terms of a settlement." PB at 17.

Based on the foregoing, the Court reaches the inescapable conclusion that plaintiff and HFC settled their dispute on August 25, 2017. As confirmed in the parties' emails, on that date the parties reached a meeting of the minds as to all material settlement terms. A contract is enforceable if the parties agree on essential settlement terms and manifest an intention to be bound by those terms. <u>Lightman</u>, 988 F. Supp. at 458. This is what occurred here.

3.    <u>Plaintiff's Arguments are Rejected</u>

Plaintiff's main defense to HFC's motion is that she "wished" for HFC to pay her attorney's fees. PB at 17.[7] However, when plaintiff agreed to settle on August 25, 2017, she did not make it known this was a condition to settling. If plaintiff wanted to condition the settlement on HFC paying her attorney's fees, she should have told HFC. Plaintiff's unexpressed intentions are not controlling. Instead, objective manifestations of intent are controlling when determining if there is a meeting of the minds. <u>See</u> <u>Brawer v. Brawer</u>, 329 N.J. Super. 273, 283 (App. Div. 2000)(citation omitted)("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly

_____

[7] Plaintiff writes: "Plaintiff's counsel repeatedly advised HFC in accordance with Plaintiff's directives and throughout the negotiation process that she wished for HFC to pay her attorneys' fees and costs." PB at 16-17.

manifested."); <u>Leitner v. Braen</u>, 51 N.J. Super. 31, 38 (App. Div. 1958)("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, <u>i.e.,</u> their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former.").

It is true that prior to their settlement on August 25, 2017, plaintiff inquired whether HFC would pay plaintiff's attorney's fees. However, the record could not be clearer that HFC never agreed to pay these fees and HFC made this known to plaintiff's counsel. Plaintiff acknowledges this fact in her Brief.

- "HFC also continued to communicate its refusal to pay Plaintiff's attorneys' fees and costs as part of the proposed settlement[.]" PB at 12.

- "HFC's refusal to reimburse Plaintiff's legal expenses was confirmed in an email exchange on August 24 and 25, 2017 between counsel for Plaintiff and HFC." PB at 13.

- "In the context of the negotiations, HFC never offered nor agreed to reimburse Plaintiff's litigation costs. Plaintiff did agree to settle her claims with HFC that relate to HFC the Subject Mortgage and her credit history, despite HFC not agreeing to reimburse her litigation costs." PB at 14.

It would be contrary to New Jersey's policy in favor of negotiated settlements to permit a litigant to assert that at the time he or she settled, the litigant had an intention not communicated to anyone else. <u>Id.</u> If this is permitted, "[o]ther parties to the litigation would have no realistic way to defeat

that newly-stated assertion." Id. Like what happened in U.F.C.W Local 56 Health & Welfare Fund v. J.D.'s Mkt., C.A. No. 03-5026 (RBK), 03-5027 (FLW), 04-4194 (FLW), 2006 U.S. Dist. LEXIS 94882, at *13-14 (D.N.J. May 26, 2006), "[s]ince the parties had reached agreement on all the essential terms of the settlement, the fact that [plaintiff] subsequently refused to execute a final written settlement agreement will not prevent enforcement of the settlement." Even if plaintiff wanted HFC to agree to pay her attorney's fees, this is not determinative as to whether the parties settled. As noted, the secret unexpressed intent of a party does not vary the terms of a settlement agreement. Domanske v. Rapid-American Corp., 330 N.J. Super. 241, 246 (App. Div. 2000).

Notably, plaintiff acknowledges that it was after the parties agreed to all material settlement terms that she asked to alter the settlement:

> Despite prior agreement on all material terms of the settlement, Plaintiff did express to HFC through her attorney that she wanted to alter the settlement to include payment of her costs and legal fees by the Defendants.

PB at 6.

Plaintiff relies heavily on her counsel's November 15, 2017 email (Exhibit 13) where she informed counsel for HFC that plaintiff was unwilling to sign a Settlement Agreement because plaintiff wanted HFC to pay her attorney's fees and costs. PB at

14

6. However, by this time it was too late to change the settlement terms the parties agreed to on August 25, 2017. A settlement agreement is binding even if a party changes her mind between the time she agreed to the terms of the settlement and when those terms are reduced to writing. Lightman, 988 F. Supp. at 488; Shernoff v. Hewlett-Packard Co., C.A. No. 04-4390, 2006 WL 3511188, at *4 (D.N.J. July 17, 2006).

If plaintiff argues she is not bound by her attorney's statements or emails regarding settlement she is mistaken. Where an attorney's words or conduct communicated to its adversary creates a reasonable belief that the attorney possesses authority to conclude a settlement, the settlement may be enforced. Amatuzzo, 305 N.J. Super. at 475. This certainly occurred here. Further, "[u]nder New Jersey law, settlement stipulations made by attorneys when acting within the scope of their authority are enforceable against their clients." Ezekwo v. Quirk, C.A. No. 15-3167 (SDW)(LDW), 2017 LEXIS 199993, at *9 (D.N.J. Nov. 17, 2017)(citation and quotation omitted). At all relevant times plaintiff's counsel was clearly acting on plaintiff's behalf.

To the extent plaintiff argues she was under duress when she agreed to settle, the argument is rejected. Plaintiff's burden of proof to show she agreed to settle under duress is a heavy one. A court may set aside a settlement agreement only if

a party can show, by clear and convincing evidence, that the agreement was achieved through "coercion, deception, fraud, undue pressure, or unseemly conduct." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 475 (App. Div. 2009)(quoting Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994)); see also Nolan by Nolan v. Lee Ho, 120 N.J. at 465, 472 (1990).[8] Undue pressure constituting duress does not require an actual threat, nor does it require that the defendant engage in unlawful conduct. Rubenstein v. Rubenstein, 20 N.J. 359, 365-67 (1956); Smith v. Estate of Kelly, 343 N.J. Super. 480, 499 (App. Div. 2001). For a court to find duress, however, the plaintiff must suffer "a degree of constraint or danger, either actually inflicted or threatened and impending, sufficient in severity or in apprehension to overcome the mind or will of a person of ordinary firmness." Rubenstein, 20 N.J. at 365; Smith, 343 N.J. at 499. Where a party claims to have suffered duress in the form of moral compulsion or psychological pressure, the pressure must be "so oppressive under given circumstances as to constrain one

---

[8] In United States v. Askari, 222 Fed. Appx. 115, 119 (3d Cir. 2007)(quoting In re Jobes, 108 N.J. 394, 408 (1987)), the court wrote:

> [clear and convincing evidence] produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth to the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction without hesitancy of the truth of the precise facts at issue.

to do what his free will would refuse." <u>Rubenstein</u>, 20 N.J. at 367; <u>Smith</u>, 343 N.J. at 499. Courts apply both a subjective and an objective standard to determine whether duress exists. <u>Smith</u>, 343 N.J. at 499. From a subjective standpoint, the pressure must be of a type sufficient to affect the actual control of a party's will. <u>Rubenstein</u>, 20 N.J. at 366-67; <u>Smith</u>, 343 N.J. at 499. Additionally, a court must find that the pressure in question was of sufficient intensity that "a person of reasonable firmness in plaintiff's situation would have been unable to resist." <u>Id.</u> (quotations omitted).

No credible evidence exists to support a duress argument. At all relevant times plaintiff was able to consult with her attorney. Further, there is no evidence plaintiff was threatened or coerced in any fashion. In short, to the extent plaintiff argues she was under duress when she agreed to settle, the argument is meritless. "Absent a demonstration that a settlement was procured by fraud, or some similarly compelling reasons," New Jersey courts are reluctant to set aside settlements. <u>Brundage v. Estate of Carambio</u>, 195 N.J. 575, 613 (2008). Plaintiff has not presented any credible evidence this occurred.

What occurred here is a classic case of "buyer's remorse." Although plaintiff and her attorney agreed to the essential settlement terms on August 25, 2017, plaintiff later decided she did not want to settle unless HFC paid her attorney's fees. It

is evident plaintiff had second thoughts about the settlement terms she agreed to accept on August 25, 2017. Unfortunately for plaintiff, however, she is bound by the August 25, 2017 agreement.

An instructive analogous case is Bowles v. New York Liberty, et al., C.A. No. 11-3529 (ES), 2014 WL 7148916 (D.N.J. Dec. 15, 2014). In that case plaintiff fell at Madison Square Garden and settled her lawsuit for $175,000 on the record before a Magistrate Judge. Plaintiff later refused to sign a Release and insisted she would only settle for $600,000. Like here, the defendants filed a motion to enforce the settlement. The Court granted the motion holding that the plaintiff agreed to settle for $175,000, even though she later realized she needed more money to cover her costs. Relying on Pascarella, 190 N.J. Super. at 125, the Court ruled it would not inquire into the adequacy of the settlement consideration unless there was deception, lack of independent advice, or abuse of confidential information, or where the inadequacy of consideration was "shocking to the conscience." None of this exists here. At all relevant times plaintiff was represented by competent counsel and the parties engaged in arm's length good faith settlement negotiations. Like Bowles, plaintiff cannot turn away from an agreed upon settlement. As noted in Pascarella, 190 N.J. Super. at 126, "[t]he bargain clearly was struck. If later reflection were the

test of the validity of such an agreement, few contracts of settlement would stand."

Plaintiff's reliance on Berberian v. Lynn, 355 N.J. Super. 210 (App. Div. 2002) is misplaced. In that case the defendant offered plaintiff $200,000 to settle. Instead of accepting the offer plaintiff counteroffered to settle for $225,000. Defendant rejected the counteroffer and proposed a high low offer. Plaintiff later agreed to $200,000 to settle but defendant refused to pay. On appeal the trial court's decision not to enforce plaintiff's purported settlement agreement was affirmed. The Court reasoned the $200,000 offer was no longer in effect after plaintiff did not unconditionally accept the $200,000 offer and instead made a counter-demand of $225,000. Id. at 216. Unlike Berberian, however, plaintiff did unconditionally accept HFC's settlement offer on August 25, 2017. Further, plaintiff did not make a counteroffer to settle only if HFC paid her attorney's fees. Plaintiff did not demand payment of attorney's fees as a condition to settle until after the parties settled their dispute.

To the extent plaintiff argues there was no settlement until a formal release or settlement agreement was signed, the argument is rejected. A settlement agreement need not be reduced to writing to be binding. Pascarella, 190 N.J. Super. at 124. In fact, the execution of a release is a formality. "So long as the

basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intent to be bound." Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)(citation and quotation omitted); see also In re Columbia Gas System, Inc., 50 F.3d 233, 243 (3d Cir. 1995)(referring to the execution of a written settlement agreement or release as a "perfunctory" or "ministerial act"). Indeed, an oral settlement agreement need not be made in the presence of the court to have legal effect. Pascarella, 190 N.J. Super. at 124; Lang v. Tewksbury Township, C.A. No. 10-2564 (MLC), 2012 WL 503677, at *2 (D.N.J. Feb. 15, 2012).

Agreements to settle are binding even when the parties contemplate the later execution of a formal document to memorialize their undertaking. Holland v. New Jersey Resources Corp., C.A. No. 12-07858, 2013 WL 3288162, at *2 (D.N.J. June 28, 2013)(citation and quotation omitted); Finocchiaro v. Squire Corrugated Container Corp., C.A. No. 05-5154 (SRC), 2008 WL 305337, at *3 ("[A]n oral agreement as to the essential terms of a settlement is valid even though the parties intend to reduce their agreement to a formal writing at a later time"); Bowles, 2014 WL 7148916, at *2 (citation omitted)("If the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and

although the parties contemplate that a formal agreement shall be drawn and signed.").

As discussed, any argument there was no settlement until plaintiff and HFC signed a written release or settlement agreement is rejected. This is just a reflection of plaintiff's "buyer's remorse." At no time did plaintiff or her attorney state that the execution of a formal written document was a condition of settlement. If plaintiff or her attorney wanted the settlement to be contingent on a signed release or settlement agreement, they should have said so. "Under long-settled [contract] principles, the secret unexpressed intent of a party cannot be used to vary the terms of an agreement." Domanske, 330 N.J. Super. at 246.

Plaintiff's argument that her settlement terms with HFC are "shockingly inadequate" is specious. See PB at 23-27. As a result of the settlement the mortgage on plaintiff's property will be removed and the lien on the property will be discharged. Plaintiff can continue to live in the property with no responsibility to pay the subject mortgage. In addition, the mortgage on plaintiff's credit history will be cleaned up. Also, HFC agreed to release plaintiff and dismiss its counterclaims. This is the primary relief plaintiff requested in the lawsuit. To set aside a settlement for lack of consideration, there must be a "shocking inadequacy of consideration" so as to amount to

conclusive evidence of fraud." <u>DeCaro v. DeCaro</u>, 13 N.J. 36, 44 (1953). This is plainly not the case here. Nor is there any evidence of deception, lack of independent advice or abuse of confidential relations. <u>See id.</u>

Plaintiff assumes she would win if the case went to trial. However, HFC vigorously contested liability and likely would have filed a motion for summary judgment if the parties did not settle. If HFC's motion was granted, plaintiff would not have achieved any success against HFC. Further evidence that the consideration for the parties' settlement was not inadequate is the fact that plaintiff and her counsel agreed to settle on August 25, 2017. Plaintiff would not have agreed to the settlement if the terms were "shockingly inadequate."[9]

<u>Conclusion</u>

For all the foregoing reasons, it is respectfully recommended this 28th day of June, 2018, that HFC's Motion to Enforce Settlement be GRANTED. It is also respectfully recommended that the first proposed Order included with HFC's motion [Doc. No. 191-2] be entered. Pursuant to Fed. R. Civ. P. 72(b) and L. Civ. R. 72.1(a)(2), the parties shall have fourteen

---

[9] Plaintiff's argument that the Court should Order HFC to pay her attorney's fees (PB at 27-32) is also meritless. N.J.R. 4:42-9 has no applicability in the present context. Further, given that there is no evidence of fraud, there is no support for plaintiff's argument that the Court has the power to alter the terms of the parties' settlement. <u>Zuccarelli v. DEP</u>, 326 N.J. Super. 372, 380 (App. Div. 1999).

(14) days after being served with a copy of this Report and Recommendation to serve and file objections with the Clerk of the Court.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: June 28, 2018